[Crim. No. 1185. Fourth Dist. Sept. 17, 1958.]

THE PEOPLE, Respondent, v. JESUS RAMIREZ et al., Defendants; ERNEST FRIAS IZZO, Appellant.

2

Joseph A. Katz, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Defendant-appellant Ernest Frias Izzo and defendant Jesus Ramirez were charged in count one of an indictment with selling a narcotic (heroin), [in violation of Health & Saf. Code, § 11500] on August 9, 1957. In the second count the same charge is made against appellant as occurring on August 16, 1957. Both defendants pleaded not guilty. Ramirez admitted a prior conviction of a felony (possession of narcotics) and that he served a term therefor in

prison. Appellant admitted two prior felonies (burglary and robbery). A jury trial resulted in a conviction of appellant as charged and he was sentenced to state's prison. Defendant Ramirez was found guilty of possession of narcotics under count one, a claimed included offense. Motions for new trial were denied. Appellant alone appeals and claims: 1, that the evidence is insufficient to establish (a) his identity; and (b) that the crime was committed in San Bernardino County; 2, that the court gave inconsistent instructions in reference to lesser and included offenses; and 3, that the verdict is contrary to law and inconsistent in that the jury found Ramirez guilty of a claimed included offense (possession of narcotics) and appellant guilty of sale, upon evidence which was exactly the same as to both defendants.

One Edward Nunez, the People's chief witness, a special deputy sheriff, was, on August 9th, 1957, at about 7 p. m., on duty in Cucamonga. While driving down 24th street appellant stopped him and asked him what he was doing. Nunez replied he was looking for one Elias. Appellant stated he did not know where he was but if Nunez was looking for ''junk'' (heroin) he knew where he could obtain some in Pomona. Defendant Ramirez approached them about that time and asked Nunez what he was doing there. Nunez replied he was invited by appellant to obtain some ''junk'' in Pomona and Ramirez stated he was going with them. After some discussion Nunez agreed to drive his car. They drove to Pomona and parked near a super-market at appellant's direction. Nunez was then asked by appellant: ''How much do you want?'' and Nunez replied ''two caps'' (capsules of heroin). Appellant said: ''Why don't you give me $12.00 and I will get you 3?'' Nunez then gave him $12.00 and he left. Several minutes later Nunez and Ramirez picked up appellant. They obtained two paper cups and some water and started back to Cucamonga. En route, appellant sterilized a hypodermic needle, broke a capsule and dropped it into a paper cup. Both defendants injected themselves. Ramirez assisted appellant. Nunes declined to ''fix'' himself. At one stage of the proceedings Ramirez called appellant ''Panadero'' (Spanish word for baker,—appellant's trade.) Appellant, seated in the back seat, gave the two ''caps'' to Ramirez, who was seated in the front seat with Nunez, and said: ''Give it to him'' (Nunez), and defendant Ramirez did so in San Bernardino County, about five miles east of the Los Angeles County line, near Cucamonga. These ''caps'' were contained in a cellophane

bag. After leaving appellant and Ramirez in Cucamonga, Nunez contacted the officers in San Bernardino and the capsules obtained by him from defendants were marked and sealed in an envelope and subsequently identified by Nunez at the trial. A chemist made an analysis of them and found them to contain heroin.

On August 16th Nunez again saw appellant in Cucamonga, San Bernardino County, and purchased "two caps" of heroin from him which were contained in two aluminum foil papers, for which he paid appellant $10. The "caps" were turned over to the officers and a like analysis was made with the same result. After proper identification they were received in evidence.

Appellant testified he did not sell narcotics to Nunez at any time and did not see him at Cucamonga; that appellant wore a mustache in August, 1957 (Nunez did not recall this fact.) (He said he believed appellant did wear a light jacket.) Appellant claimed he never had a light jacket. He said he probably was in Cucamonga on August 9th and August 16th. He acknowledged that on occasions he had been called "Panadero" and that he had known Ramirez five or six years.

Appellant's wife testified that appellant helped his father in the bakery on the nights here involved and said appellant wore a mustache during all of August. On rebuttal an officer testified he had known appellant three or four years, and had also known him as "Panadero." ▮ Some discrepancy existed between the testimony of Nunez and that of appellant as to the kind and color of appellant's car when they first met in Cucamonga on the night of August 9th. The testimony as to the identification of appellant and his presence at the times indicated was a factual question for the determination of the jury. (*People* v. *Mazza*, 135 Cal.App.2d 587, 596 [287 P.2d 798]; *People* v. *Thomas*, 103 Cal.App.2d 669, 672 [229 P.2d 836].)

▮ The evidence sufficiently shows that the negotiations for the sale of the heroin were commenced in San Bernardino County. Although the consideration was not passed in that county, the delivery of the heroin to Nunez occurred in San Bernardino County. There were ample facts authorizing the jury to believe that part of the acts constituting the sale took place in San Bernardino County and jurisdiction in that county was sufficiently established. (Pen. Code, § 781.)

Appellant argues that the trial court should also have given an instruction that appellant could be convicted of a claimed

lesser offense of possession and it erred in not submitting a verdict to the jury to this effect. ■ No instructions, given or refused, have been brought to us in the record on appeal. Error in refusing or giving such claimed instructions cannot be presumed. (*People* v. *McClure*, 133 Cal.App.2d 631, 633 [284 P.2d 887] ; *Thomas* v. *Laguna*, 113 Cal.App.2d 657, 660 [248 P.2d 929].) ■ Since the evidence against this appellant clearly indicates that if he was guilty at all he was guilty of the higher offense of sale, the court was justified in refusing to instruct on any claimed lesser offense even assuming, *arguendo*, that appellant was in a position to urge that possession is a lesser offense contained within the charge and that he was entitled to an instruction on the subject. (*People* v. *McCoy*, 25 Cal.2d 177, 187 [153 P.2d 315] ; Pen. Code, § 1159.)

■ The claim that the evidence as to the sale by appellant and as to possession by defendant Ramirez was exactly the same and accordingly inconsistent verdicts were reached, is not borne out by the record. Appellant cites *People* v. *Talbot*, 220 Cal. 3, 17 [28 P.2d 1057], and *People* v. *Anglopoulos*, 30 Cal.App.2d 538, 549 [86 P.2d 873], in support of his contention. The sale was negotiated by and between Nunez and appellant without the aid of Ramirez. Ramirez's possession of the heroin, although temporary, appeared to be an independent transaction and the jury concluded he did not participate in the sale. The verdict rendered against Ramirez, whether justified or not, was not inconsistent with the verdict rendered against appellant to the extent that appellant was thereby prejudiced. (*People* v. *Talbot*, *supra*; *People* v. *Edwards*, 81 Cal.App.2d 655, 661 [185 P.2d 74] ; *People* v. *Lamb*, 134 Cal.App.2d 582, 585 [285 P.2d 941].)

Judgment and order denying a new trial affirmed.

Mussell, J., and Coughlin, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.