[Crim. No. 22490. Second Dist., Div. Five. Nov. 14, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
CURTIS BROWN, Defendant and Appellant.

## COUNSEL

Thomas Kallay, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and James H. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ASHBY, J.**—By information appellant was charged with two counts of rape (Pen. Code, § 261, subd. 2), one count of sodomy (Pen. Code, § 286), one count of attempted rape (Pen. Code, §§ 664, 261, subd. 2), and one count of unlawful possession of secobarbital (Health & Saf. Code, § 11910). The jury was unable to reach a verdict and a mistrial was declared. The prosecution filed an amended information charging the same five counts, plus two counts of unlawful sexual intercourse. (Pen. Code, § 261.5).[1] The count relating to possession of secobarbital was struck on the People's motion. Appellant's motion to strike the two counts charging unlawful sexual intercourse was denied. The jury found appellant guilty of two counts of unlawful sexual intercourse and of the sodomy count, the victim in each case being Melinda K.[2] Appellant was found not guilty on the other charges. As to one count of unlawful sexual intercourse the jury recommended imprisonment in the county jail, and as to the other count it recommended imprisonment in the state prison. Following a diagnostic study pursuant to Penal Code section 1203.03, the court sentenced appellant to be imprisoned in the state prison on all counts, the sentences to run concurrently. This appeal is from the judgment.

Melinda K., who was 15 years old, and her friend Erika M., who attended Hollywood High School, ran away from home together the evening of April 27, 1971. At about 2 p.m. the next day they were hitchhiking on La Brea Boulevard near Hazel. Appellant, driving along Hazel Street, picked up the girls in his vehicle and then continued on. The girls rode around with appellant for approximately the next three hours, during which

---

[1]Penal Code section 261.5 reads: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years."

[2]We will avoid using the victims' full names in this opinion.

time he stopped for a few minutes at an automobile body shop, an insurance office, and a liquor store.

Leaving the liquor store, they passed Normandie Avenue, and Melinda asked appellant to let them off at that point. Appellant made no reply and continued driving. As the car passed Vermont, Melinda again asked appellant to stop, but he replied that they would all go to his house where the girls could use his telephone to call someone to pick them up.

Appellant parked his car in an alley behind his apartment building, and he and the girls entered the building. After they entered appellant's apartment he locked the door with a sliding latch and told the girls that they could not make their telephone call. Appellant put on some music and told the girls to sit down and talk awhile. He offered them wine, some reds, and some marijuana, which the girls declined.

When the girls told appellant they wanted to leave, he said they had three choices: they could call the police, they could live with him, or one of them would have to go to bed with him. The girls told appellant they chose to call the police, and he picked up the telephone, but then hung it up and said that one of the girls would have to go to bed with him. He sent them into the bathroom to decide which of the two it was going to be.

The girls tried to climb out a bathroom window, but appellant came in and pulled them into the living room. He sent Erika into the kitchen, having decided on Melinda. Erika picked up a pot of beans and a knife, but appellant picked up another knife and told Erika to drop it or he would kill her.

Appellant pushed Melinda onto a bed, removed her clothes and had intercourse with her for about 10 minutes. During this time appellant held a knife in his hand and threatened Melinda with it. He also threatened Erika with the knife, when she was crying and banging on the door.

Appellant went into the bathroom, reemerged, and announced that he wanted to try Erika. Erika pulled away from him, fell to the floor and began crying. Appellant went back to Melinda, undressed her a second time, engaged in a second act of intercourse with her, then turned her over on her stomach and committed sodomy on her. The girls then got dressed, and ran from the apartment to a phone booth, where they called Bob Bendorf, a friend. A Mr. Cerda passed by the telephone booth and observed Erika standing outside it with Melinda inside, crying hysterically.

Mr. Cerda asked what happened, and Erika explained that Melinda had been raped by a man in one of the apartments. Mr. Cerda returned to his nearby shop and telephoned the police. When he returned to the telephone booth, he observed that both girls were hysterical. Mr. Bendorf arrived at the telephone booth a few minutes later, and observed that both girls were shaking, crying, and holding their undergarments in their hands. Police officers arrived and observed both girls to be hysterical. Appellant was subsequently arrested at his apartment.

The officers took Melinda and Erika to a hospital to be examined, and a vaginal smear test was taken of Melinda. This test revealed the presence of sperm. The girls were then taken to the police station and interviewed. Melinda stated that she had been raped, but she did not mention the sodomy separately because she thought that it was part of the rape. Melinda's parents picked her up at the police station and took her home. A conversation with Melinda prompted her mother to examine Melinda's rectum, which she observed to be red, swollen, irritated and puffy. In addition Melinda's arms were bruised and there was a puncture mark in her neck. Two days after the crime Melinda was interviewed by a policewoman Janice Carlson. Melinda related to Officer Carlson that appellant had committed sodomy on her. The jury was instructed that the testimony was admitted solely to show that the statement was made and not for the truth of its content.

■ Appellant contends that the trial court erred in allowing the prosecution, after the mistrial, to amend the information to allege two counts of unlawful intercourse in addition to the two counts of rape which were charged in the original information. He argues, citing *Kellett* v. *Superior Court,* 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206], that because the unlawful intercourse counts were based upon the same course of conduct involved in the rape, they were required to be alleged in the original information and could not be added subsequently. We disagree.

■ The test for determining whether the trial court abused its discretion in permitting the amendment of the information is whether the amendment prejudiced the substantial rights of the defendant, and attempted to change the offense to one not shown by the evidence taken at the preliminary examination. (*People* v. *Spencer,* 22 Cal.App.3d 786, 799 [99 Cal.Rptr. 681]; *People* v. *Flowers,* 14 Cal.App.3d 1017, 1020 [92 Cal. Rptr. 647].) In *Flowers* the court said, " '. . . [A]n amendment cannot be made under the section [Pen. Code, § 1009] if it prejudices the substantial rights of a defendant; and inasmuch as he is furnished with a copy of the transcript of the proceedings at the preliminary hearing, he has

notice of any charge that under the section may be placed against him by amendment of the information. The section itself preserves the substantial rights of the party to a trial on a charge of which he had due notice, and that is all the Constitution requires.' " ▉ In the instant case appellant was aware at the preliminary hearing that the victim was 15 years old and thus was not prejudiced by the amendment charging unlawful intercourse. (See *People* v. *Collins,* 54 Cal.2d 57, 60 [4 Cal.Rptr. 158, 351 P.2d 326].)

Appellant's reliance on *Kellett* is misplaced. *Kellett* involved an attempted prosecution for violation of Penal Code section 12021 after the petitioner had pleaded guilty and had been sentenced on a charge of violating Penal Code section 417, based upon an incident where he was standing on a public sidewalk with pistol in hand. The court said, ". . . When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted *if the initial proceedings culminate in either acquittal or conviction and sentence.*" (Fn. omitted.) (63 Cal.2d at p. 827; italics added.)

The instant case is not one of multiple prosecution because the first trial resulted in a mistrial, not an acquittal or a conviction. This case is controlled by *People* v. *Flowers, supra,* where a trial for robbery, Penal Code section 211, resulted in a mistrial, and an amendment to the information added an additional charge of assault by means of force likely to produce great bodily injury, Penal Code section 245. The defendant was acquitted of the robbery and convicted of the assault in the second trial. The court upheld the amendment to the information and rejected the contention that the defendant was being harassed or vexed with successive prosecution. The court pointed out that where the first trial resulted in a mistrial due to disagreement of the jury the status of the case was the same as if there had been no trial. (14 Cal.App.3d at p. 1021.) Likewise here appellant was not the victim of harassment or successive prosecution.

▉ Appellant next contends that the court erred in admitting Officer Carlson's testimony that on the second day after the crime Melinda told her that appellant had committed an act of sodomy. He argues that the complaint was made too long after the crime to be admissible. This is without merit. ▉ The "complaint doctrine" in sex cases is distinct from the spontaneous statement exception to the hearsay rule. (*People* v. *Butler,*

249 Cal.App.2d 799, 804-805 [57 Cal.Rptr. 798].) The doctrine admits testimony by third persons that the victim complained of a sex act by the defendant, on the ground that "[i]t is natural to expect that the victim of such a crime would complain of it, and the prosecution can show the fact of complaint to forestall the assumption that none was made and that therefore the offense did not occur." (*People* v. *Burton,* 55 Cal.2d 328, 351 [11 Cal.Rptr. 65, 359 P.2d 433].) ▮ The testimony was properly admitted for this purpose, the trial court explaining to the jury that the statement was admitted into evidence only to show that it was made, and not for the truth of its content. Adequate evidence was presented to explain the two-day delay in making of the complaint, namely that Melinda considered the sodomy as part of the rape and therefore did not mention it separately in her first interview with the police, and also that it is not unusual for the female victim in a sex case to be more reluctant to give full details of the offense to a male officer than a female officer. There being only a two-day delay, and an explanation for it, the delay affected only the weight of the testimony and not its admissibility. (See *People* v. *Banos,* 209 Cal.App.2d 754, 758 [26 Cal.Rptr. 127]; *People* v. *Staggs,* 180 Cal. App.2d 578, 580 [4 Cal.Rptr. 587].)

Appellant argues that Penal Code section 264, specifying the punishment for rape, is unconstitutional. Penal Code section 264 provides: "Rape, as defined in Section 261, is punishable by imprisonment in the state prison for not less than three years. Unlawful sexual intercourse, as defined in Section 261.5, is punishable either by imprisonment in the county jail for not more than one year or in the state prison for not more than 50 years, and in such case the jury shall recommend by their verdict whether the punishment shall be by imprisonment in the county jail or in the state prison; . . ."

▮ Appellant makes two arguments as to its constitutionality: (1) The statute gives no guidelines to the jury to assist it in determining whether a county jail or a state prison sentence should be imposed and therefore violates the due process clause by being vague and standardless, and (2) to the extent that it authorizes a maximum of 50 years' imprisonment for unlawful intercourse it violates article I, section 6, of the California Constitution, prohibiting cruel or unusual punishments, because the punishment is grossly disproportionate to the offense. (*In re Lynch,* 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].)

The first contention was squarely resolved against appellant in *People* v. *Wilson,* 20 Cal.App.3d 507, 510-511 [97 Cal.Rptr. 774]. Appellant

makes no attempt to state what the standards for guiding the jury should be. A majority of the United States Supreme Court in *McGautha* v. *California,* 402 U.S. 183, 204-208 [28 L.Ed.2d 711, 724-727, 91 S.Ct. 1454], found that the problem of attempting to formulate standards for guiding the jury's exercise of discretion whether to impose the death penalty was so difficult that any attempt to do so was likely to be fruitless, and held that the statute leaving such discretion to the jury was not "offensive to anything in the Constitution." (*Id.* at p. 207 [28 L.Ed.2d at p. 726].) Footnote 18 pointed out that in *Giaccio* v. *Pennsylvania,* 382 U.S. 399, 405, footnote 8 [15 L.Ed.2d 447, 451, 86 S.Ct. 518], the court had said it intended " 'to cast no doubt whatever on the constitutionality of the settled practice of many States to leave to juries finding defendants guilty of a crime the power to fix punishment within legally prescribed limits.' " (402 U.S. at p. 208 [28 L.Ed.2d at p. 726].)

There is no merit to the argument that the jury's action in the present case, recommending county jail imprisonment on count VI and state imprisonment on count VII, demonstrates arbitrariness. Appellant's argument is that there was no qualitative difference between the two acts of intercourse involved and that the sentence recommendations showed mere caprice. On the contrary, the second act was accompanied by the sodomy, of which appellant was also found guilty, and the jury might reasonably consider the second offense to involve a more aggravated crime demonstrating a brutal attitude. Even if it were conceded that there was an inconsistency between the two verdicts it would not call for reversal. The inconsistency is likely the result of mercy rather than confusion on the part of the jury. (*People* v. *Amick,* 20 Cal.2d 247, 252 [125 P.2d 25]; *People* v. *Stovall,* 94 Cal.App. 635, 637 [271 P. 576]; *People* v. *Smith,* 117 Cal.App. 530, 534 [4 P.2d 268]; *People* v. *De Priest,* 2 Cal.App.3d 423, 431-432 [82 Cal.Rptr. 526].)

Appellant's second contention relating to the statute is that a maximum punishment of imprisonment for 50 years for unlawful intercourse is so grossly disproportionate to the crime as to constitute cruel or unusual punishment. In the recent case of *In re Lynch, supra,* 8 Cal.3d 410, 424, the California Supreme Court held that a punishment may violate article I, section 6, of the California Constitution if it "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." There the court struck down that portion of Penal Code section 314 which imposes a sentence of life imprisonment for a second conviction of indecent exposure.

In *Lynch* the court considered both the seriousness of the crime of indecent exposure in general and the seriousness of the defendant's conduct in particular. When those factors are considered here it is clear that the instant case is nothing at all like *Lynch*. The crime of unlawful intercourse is a very serious one. The victim of the crime of unlawful intercourse can range from 17 years of age all the way down to infancy. Appellant argues that unlawful intercourse involves "consensual" acts. ■ It is the age of the victim and not "consent" or lack of force which distinguishes unlawful intercourse from rape. Because of her age the minor is incapable of giving consent. (See *People* v. *Johns*, 173 Cal.App.2d 38, 46 [343 P.2d 92].) Consent is irrelevant to the crime of unlawful intercourse. One cannot expect a child of tender years to resist.

Nor do the facts of the instant case give any reason to believe that the crime of unlawful intercourse as it occurred here is a trivial offense as appellant argues. The only testimony concerning the circumstances of the sex acts in question was the testimony of Melinda and Erika. The evidence indicated that appellant threatened to kill Erika with a knife, and held the knife on Melinda while having intercourse with her. With the knife he made a puncture wound in Melinda's throat. He also pointed the knife at Melinda's sexual organs and threatened both Melinda and Erika that he would "stick it up [your] ass." Melinda's mother found bruises on her arms. There was considerable evidence that after escaping from the apartment both girls were "hysterical." Substantial cross-examination failed to shake Melinda's testimony. Appellant did not testify in his own behalf. There was no testimony other than the girls' as to what occurred in the apartment.

■ Thus only one version of the incident was presented to the court, and the evidence clearly showed that what took place was a violent and forcible rape. Under the circumstances the fact that the jury chose to convict appellant of unlawful intercourse instead of forcible rape can only be attributed to the mercy and leniency of the jury. Apropos here is the comment of the court in *People* v. *Ghione*, 115 Cal.App.2d 252, 255 [251 P.2d 997]. The defendant, an ex-boxer, had killed a man with blows to the head in a fight. Charged with manslaughter but convicted by the jury only of a battery he complained on appeal that such a result was illogical. The court upheld the conviction of battery saying: "The case on its facts was anything but close and on the record before us it seems clear that the jury seized, for some reason known only to themselves, on the opportunity, given them by the instruction that they might find the defendant guilty of battery, to ameliorate the law in its application to the facts." In *People* v. *Powell*, 34 Cal.2d 196 [208 P.2d 974], the defendant caused a death as

a result of a criminal abortion, which constituted second degree murder, but was found guilty only of manslaughter in a nonjury trial. The court said: "It cannot be doubted that a trier of fact has and often exercises the *power,* because of obvious extralegal factors or for no apparent reason, to find a defendant guilty of a lesser degree or class of crime than shown by the evidence. . . . An appellant is precluded from complaining that he was convicted of a lesser offense than the one of which he is guilty according to undisputed evidence, or according to that view of the evidence which, it indisputably appears, the trier of fact accepted." (34 Cal.2d at pp. 205, 206; italics in original.) Upholding the judgment the court said: ". . . We are of the opinion that we are not warranted, where, as here, the reason for the trial court's finding of manslaughter is not apparent, in seizing upon the explanation that the court deliberately found defendant guilty of manslaughter although it was not convinced beyond a reasonable doubt that he was guilty of any criminal homicide, rather than accepting one of the equally possible and far more probable explanations that the trial court, because of what technically may be extralegal considerations, such as mercy, tempered the harsh application of the law . . . ." (34 Cal.2d at p. 207.) In *People* v. *Edwards,* 72 Cal.App. 102, 118 [236 P. 944], it was said: " 'It is a well-known fact that juries frequently hesitate to return verdicts of guilty on a large number of counts, when the punishment which may be imposed on each count is as severe as that provided for violation of this statute . . . . They therefore satisfy their consciences by a verdict of guilty on one or two counts, and not always on the counts supported by the strongest evidence.' " In *People* v. *Smith,* 195 Cal.App.2d 735, 738 [16 Cal.Rptr. 12], the jury exercised mercy by convicting the defendant of assault with intent to commit rape instead of rape which the evidence logically indicated. (See also *People* v. *Amick, supra,* 20 Cal.2d 247, 252; *People* v. *Braun,* 29 Cal.App.3d 949, 974 [106 Cal.Rptr. 56]; *People* v. *Smith,* 117 Cal.App. 530, 534 [4 P.2d 268].) There is only one version of the facts in the instant record and thus there is no basis whatsoever on which we could find that the circumstances of the crime were anything other than as indicated by the victims. On this record it is not at all shocking to the conscience or offensive to fundamental notions of human dignity that appellant should be subjected to the penalties provided by Penal Code section 264 for committing this crime. This is hardly a case of sending a man to prison for making love to his high school sweetheart. Whatever appeal the argument that the punishment is excessive might have in some other hypothetical case, it has none here. The general rule is that one will not be heard to attack the constitutionality of a statute on grounds not applicable to his own case. (*In re Cregler,* 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; *People* v. *Rehman,* 253 Cal.App.2d 119,

154 [61 Cal.Rptr. 65]; *People* v. *Parker,* 33 Cal.App.3d 842, 848-849 [109 Cal.Rptr. 354].)

Penal Code section 264 has a built-in safeguard against the imposition of a long state prison sentence in the case of a trivial sexual indiscretion. That is the power of the jury to determine that the offense be only a misdemeanor with a maximum punishment of one year's imprisonment in the county jail.

In the instant case appellant "had the benefit of the jury's compassion, rather than suffering a burden because of its passion . . . ." (*People* v. *Smith, supra,* 117 Cal.App. 530, 534.) Although the only evidence before us indicates that appellant committed forcible rape, which is punishable by imprisonment for life, the jury found him guilty only of unlawful intercourse and recommended state prison on count VII and county jail on count VI. We would be highly unwarranted in finding that the punishment for unlawful intercourse as applied to this case is cruel and unusual. (See *Bass* v. *State* (Tex.Crim. 1971) 468 S.W.2d 465, 467 (life imprisonment for statutory rape); *People* v. *Jones* (1971) 2 Ill.App.3d 636 [276 N.E.2d 759, 761] (40-60 years' imprisonment for statutory rape); 65 Am.Jur.2d, Rape, § 115, p. 833.)

█ The trial court imposed a sentence of imprisonment in the state prison on count VI notwithstanding the jury's recommendation of imprisonment in the county jail. The Attorney General concedes that the sentence was erroneous under a long-standing rule that when the jury recommends county jail the trial court may not impose a state prison sentence. (*In re Ferguson,* 233 Cal.App.2d 79, 81 [43 Cal.Rptr. 325]; *People* v. *Pantages,* 212 Cal. 237, 270 [297 P. 890]; *People* v. *Rambaud,* 78 Cal.App. 685, 689 [248 P. 954].)

The sentence on count VI is set aside and the cause remanded to the trial court with directions to resentence defendant on that count, not to exceed one year in the county jail. In all other respects the judgment is affirmed.

Kaus, P. J., and Hastings, J., concurred.