[Crim. No. 15137. First Dist., Div. One. Dec. 10, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RAY COATES GOTTMAN, Defendant and Appellant.

776

**COUNSEL**

Ray Coates Gottman, in pro. per., and John M. Hanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ELKINGTON, J.**—We granted a rehearing following our initial opinion on this appeal, in order to give further consideration to the Attorney General's insistence that the opinion constituted "a triumph of illogic over justice." The issue raised in the petition concerns the role of a jury in the administration of criminal justice.

Defendant Gottman was charged with (1) "rape by threat of great bodily harm," a violation of Penal Code section 261, subdivision 3, and (2) a violation of Penal Code section 288a which proscribed the act of copulating the sexual organ of one person with the mouth of another. As to the Penal Code section 288a charge it was further alleged that Gottman "did compel the participation of said other person in said act of oral copulation by force, violence, duress, menace and threat of great bodily harm."

Gottman had admitted two prior convictions of felony, i.e., assault with intent to commit rape, and burglary, second degree.

At the time of the commission (July 29, 1975) of the offenses charged against Gottman, a consensual violation by adults of Penal Code section 288a was punishable "by imprisonment in the state prison for not exceeding 15 years, or by imprisonment in the county jail not to exceed one year; . . ." But such an act when nonconsensual, i.e., by "force, violence, duress, menace, or threat of great bodily harm," was punishable by "imprisonment in the state prison for not less than three years." It will be seen that the consensual act constituted a lesser degree of the crime denounced by the statute.

A jury found Gottman "guilty of a felony, to-wit a violation of California Penal Code Section 261.3 (*Rape by threat of great bodily harm*)." (Italics ours.) But while finding him guilty of the Penal Code section 288a charge they found that the subject act was consensual, in

that Gottman *"did not use force, violence, duress, menace and threat of great bodily harm."* (The italics again are ours.) From the evidence before the jury the only reasonable conclusion to be drawn was that if Gottman had in fact committed the two offenses, then each had been committed *by threat of great bodily harm,* and neither was consensual.

Gottman was thereafter sentenced to imprisonment in the state prison, the "Sentences to run concurrently; execution on [the Pen. Code, § 288a, sentence] stayed during period of appeal then become final." His appeal is from the judgment of conviction of both offenses.

Pending Gottman's appeal the state's Supreme Court has held that the 1975 amendment to Penal Code section 288a, decriminalizing consensual acts of oral copulation between adult persons, "requires the dismissal of a pending criminal proceeding charging such conduct." The ruling is applicable to such proceedings as were pending on appeal at the time of the decision. The high court's holding will be found in *People* v. *Rossi,* 18 Cal.3d 295 [134 Cal.Rptr. 64, 555 P.2d 1313].

In our now vacated opinion we respected the jury's verdict, finding that the Penal Code section 288a act of which Gottman was found guilty was consensual. And obedient to the rule as stated by *People* v. *Rossi, supra,* we ordered the judgment modified by striking therefrom reference to the Penal Code section 288a conviction.

I.  On his petition for rehearing the Attorney General argues: "It is obvious to everyone outside this Court that the act of oral copulation, performed at knife point, was not consensual. It will appall and surprise the victim that she consented to the appellant's depravities. It will also shock the jurors to learn that they 'found' that the victim consented to the violation of section 288a, especially since they determined that the same victim during the same course of events did not consent to the act of sexual intercourse. This Court's conclusion of consent is conclusively refuted by the uncontradicted evidence in the record. . . . In sum, this Court's opinion is legally, logically, and morally unacceptable. . . . We request a rehearing to prevent a miscarriage of justice."

Regrettably, it becomes necessary to reiterate a basic and long-recognized principle of criminal law and procedure throughout the United States.

In a criminal case a jury's acquittal, or finding of a lesser degree of guilt than that charged, although contrary to uncontradicted evidence, is final and absolute, and irreversible by trial and appellate courts. It may be, as insisted by the Attorney General, that the rule is illogical, or at least sometimes operates that way. But our history and tradition have made it clear at least to most that such a rule, on balance, is preferable to one which permits a judge, or some other power, to compel a jury's guilty verdict, or to set aside a jury's verdict of acquittal.

■ It was long ago held in *People* v. *Lem You,* 97 Cal. 224, 228 [32 P. 11], that a jury "necessarily has the naked *power* to decide all the questions arising on the general issue of not guilty; but it only has the *right* to find the facts, and apply to them the law as given by the court." (Latter italics ours; see also *People* v. *Powell,* 34 Cal.2d 196, 205-206, fn. 2 [208 P.2d 974]; *People* v. *Brown,* 35 Cal.App.3d 317, 327 [110 Cal.Rptr. 854]; *People* v. *Smith,* 195 Cal.App.2d 735, 738-739 [16 Cal.Rptr. 12]; *People* v. *Doyle,* 175 Cal.App.2d 309, 312 [345 P.2d 971].) This power to decide contrary to the evidence is sometimes described as a "naked power," without right. (*People* v. *Macken,* 32 Cal.App.2d 31, 41 [89 P.2d 173].) Where the jury have so abused their power courts may not intervene, and the jury having " 'paltered with their oaths and with the law they must make their own peace with conscience.' " (*People* v. *Stovall,* 94 Cal.App. 635, 637 [271 P. 576].)

The United States Supreme Court has succinctly said: "The judge cannot [in a criminal case] direct a verdict, it is true, and the jury has the power to bring in a verdict in the teeth of both law and facts. . . . [T]he jury were allowed the technical right, if it can be called so, to decide against the law and the facts . . . ." (*Horning* v. *District of Columbia,* 254 U.S. 135, 138-139 [65 L.Ed. 185, 186-187, 41 S.Ct. 53].)

Lower federal courts are in precise agreement. "There has evolved in the Anglo-American system an undoubted jury prerogative-in-fact, derived from its power to bring in a general verdict of not guilty in a criminal case, that is not reversible by the court. . . . The existence of an unreviewable and unreversible power in the jury, to acquit in disregard of the instructions on the law given by the trial judge, has for many years co-existed with legal practice and precedent upholding instructions to the jury that they are required to follow the instructions of the court on all matters of law." (*United States* v. *Dougherty,* 473 F.2d 1113, 1130, 1132 [154 App.D.C. 76].) "We recognize . . . the undisputed power of the jury

to acquit, even if its verdict is contrary to the law as given by the judge and contrary to the evidence." (*United States* v. *Moylan,* 417 F.2d 1002, 1006 [cert. den., 397 U.S. 910 (25 L.Ed.2d 91, 90 S.Ct. 908)].) "If they will, jurors may set at defiance law and reason and refuse to find the accused guilty; when they do, he escapes, however plain his guilt. But, though that is within their power, it is not within their right; they are as much bound by the law as a court." (*Seiden* v. *United States,* 16 F.2d 197, 198.) "We interpret the acquittal as no more than [the jury's] assumption of a power which they had no right to exercise, but to which they were disposed through lenity." (*Steckler* v. *United States,* 7 F.2d 59, 60.)

A few such expressions from sister states follow. "The obverse of the principle prohibiting directed verdicts in criminal trials is the recognized prerogative of a jury to disregard the evidence or the judge's instructions." (*Watts* v. *United States* (D.C.App.) 328 A.2d 770, 772.) "[W]hile the jury has the power to refuse to find any fact regardless of how clearly it may appear to a judge to have been proved, the jury does not, so to speak, have the right to find a fact and then refuse to render the verdict which such a finding necessarily requires." (*People* v. *Mussenden,* 308 N.Y. 558 [127 N.E.2d 551, 554].) "It is the duty of the trial courts to refuse to give instructions where the evidence and the law does not warrant the giving of them, it being the duty of the court to declare the law notwithstanding the jury has the power to disregard both the evidence and the instructions of the court." (*McMullin* v. *State,* 187 Ark. 1163 [60 S.W.2d 177, 178].) "Undoubtedly it is within the power of a jury to disregard the evidence and acquit persons whom the evidence shows to be guilty of the crime charged in the indictment. It is also true that a jury might disregard the instructions of the court and find for a lower degree of homicide than that warranted by the evidence and the state have no remedy." (*Clark* v. *State,* 169 Ark. 717 [276 S.W. 849, 855].)

It should be noted that the rule under discussion recognizes also a jury's power to find an accused guilty of an offense of a lesser degree than that manifested by the evidence and the trial court's instructions, as in the case before us. (See *People* v. *Powell, supra,* 34 Cal.2d 196, 205; *People* v. *Brown, supra,* 35 Cal.App.3d 317, 326-327; *People* v. *Smith, supra,* 195 Cal.App.2d 735, 738.)

However, a trial court is under no duty, nor is it proper, to advise a jury concerning their power, as distinguished from their right, to return an unwarranted verdict or other factual finding. (*Horning* v. *District of*

*Columbia, supra,* 254 U.S. 135, 138 [65 L.Ed. 185, 186-187]; *United States* v. *Dougherty, supra,* 473 F.2d 1113, 1136; *Seiden* v. *United States, supra,* 16 F.2d 197, 198; *Watts* v. *United States, supra,* 328 A.2d 770, 772.)

From the foregoing discussion it follows that the Attorney General's instant contention is invalid.

II. ■ An equally invalid contention of the petition for rehearing is based upon the *form* of the jury's verdict returned on the Penal Code section 288a charge. The verdict, as is customary, had been prepared by the clerk of the trial court for the jury's convenience. As pertinent to this discussion it read: "We, further find that at the time of the commission of the offense the defendant DID NOT use force, violence, duress, menace ~~did~~/did not and threat of great bodily harm." The capitalized words were in the handwriting of a member of the jury.

The Attorney General's contention is founded upon the clerk's use of the conjunctive "and" in the verdict, instead of the statute's disjunctive "or." He argues that since Gottman was "found not to have used force, violence, duress, menace, *and* threat of great bodily harm," the jury necessarily "concluded that he threatened bodily harm, but did not actually inflict violence" upon his victim.

The trial court was under a duty to, and presumably did,[1] instruct the jury, as to the Penal Code section 288a charge, that they must determine whether the act, if committed, was *compelled* by one or more or all of the means recited in the statute. As the means of expressing their finding on that issue, they were handed the above-described verdict form. The form, as completed, must necessarily be read as their written finding, however misguided or contrary to the evidence, that the proscribed act was not *compelled,* or in other words that it was *consensual.* We so construe it.

[1] We have not been furnished with a record of the trial court's instructions, but in the absence of a showing to the contrary we presume no error. (See *People* v. *Jackson,* 183 Cal.App.2d 562, 572 [6 Cal.Rptr. 884]; *People* v. *Ramirez,* 163 Cal.App.2d 590, 594 [329 P.2d 499].) A proper instruction at the time would have been in the language of CALJIC No. 10.42 (3d rev.ed. 1970) as follows:
"It is charged [in Count . . .] that the defendant compelled the participation of the other party in the alleged act by force, violence, duress, menace and [or] threat of great bodily harm.
"If you find the defendant guilty of the crime thus charged, you must then determine whether or not such participation of the other party to the act was compelled by any of such means and include a finding on that question in your verdict."

Were we to reach a contrary construction, we should then be obliged to declare reversible error, for the jury in that event would have been erroneously advised how to report a finding that the criminal act was not compelled. Indeed, so construed it would have been impossible for them to report such a finding using the verdict form given them for that purpose.

The verdict and judgment, insofar as they relate to Gottman's conviction on a charge of violating Penal Code section 288a will accordingly be vacated. ·

III. ■ Contrary to Gottman's contention there was, beyond any doubt, substantial evidence (see *People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]) in support of his conviction of rape by threats of great and immediate bodily harm. (Pen. Code, § 261, subd. 3.)

The complaining witness "positively" identified Gottman as the stranger with a knife in his hand, who ,had somehow entered her apartment while she slept. She testified: When she first observed him the lights of the room were on and his face was partially covered with a towel; he then turned out the lights, but during the subject sexual acts, "all the time he was within inches of my face and I was looking into his face"; she found herself able to recognize his features. She had submitted to his sexual demands from fear of violence from the knife which he held in a threatening manner. She also reported to the police and testified that her assailant smelled of "outrageously strong" cologne. A week after the incident a police officer arrested Gottman who was occupying an automobile in the parking area for tenants of the complaining witness' apartment building about 1:50 a.m. He had a strong cologne odor about him and he gave false explanations for his presence there.

■ The jury's finding that Gottman did not use "force, violence, duress, menace and threat of great bodily harm" in relation to the Penal Code section 288a offense, does not necessarily imply, contrary to the jury's express finding, that the act of sexual intercourse of the rape charge was in fact consensual. Instead, under the circumstances of this

case, it must be deemed an act of mercy. Gottman is precluded from complaining, since he probably "had the benefit of the jury's compassion, rather than suffering a burden because of its passion, . . ." (*People* v. *Smith,* 117 Cal.App. 530, 534 [4 P.2d 268]; and see *People* v. *Ferrel,* 25 Cal.App.3d 970, 975 [102 Cal.Rptr. 372]; *People* v. *De Priest,* 2 Cal.App.3d 423, 432 [82 Cal.Rptr. 526]; *People* v. *Thompson,* 193 Cal.App.2d 620, 627-628 [14 Cal.Rptr. 512].) And Penal Code section 954 provides that "An acquittal of one or more counts shall not be deemed an acquittal of any other count."

IV. ■ Before any evidence was taken at the trial, the court explained to the impaneled jury the concept of proof beyond a reasonable doubt. We find no fault with the explanation. However, the court, among other things, stated that proof beyond a reasonable doubt was not "the highest possible test," and then continued: "The highest possible test would be to prove the defendant guilty beyond any shadow of a doubt."

Several days later, and after the jury had commenced their deliberations, they asked for "clarification of reasonable doubt and shadow of a doubt." The court properly instructed them in substantially the language of Penal Code section 1096, and then stated: "You made reference that you sent to me the term shadow of a doubt. To the best of my recollection, the only time that was mentioned was by me in my voir dire examination originally and I have had the reporter locate that. Do you want that read to you, Mr. Chambers [the foreman]?" The foreman answered: "According to the other members of the jury, that isn't necessary to read shadow of a doubt." Gottman contends error.

We observe no error, at least no prejudicial error. While, as we recently suggested in *People* v. *Garcia,* 54 Cal.App.3d 61 [126 Cal.Rptr. 275] (cert. den., 426 U.S. 911 [48 L.Ed.2d 838, 96 S.Ct. 2238]), trial courts would be well advised not to improvise on the traditional reasonable doubt instructions of Penal Code sections 1096 and 1096a, here the claimed error was favorable to Gottman. Such consideration, if any, as the jury may have given to the concept of proof "beyond any shadow of a doubt" would have tended to cause them to apply a higher than necessary standard of proof for conviction.

V. The remaining contention of Gottman relates to his now invalid Penal Code section 288a conviction. Its resolution has become unnecessary to our disposition of the appeal.

The superior court will modify the judgment by striking therefrom reference to Gottman's Penal Code section 288a conviction; as so modified the judgment is affirmed. Gottman's commitment to state prison will be amended to conform to the modified judgment.

Molinari, P. J., and Weinberger, J.,* concurred.

A petition for a rehearing was denied January 7, 1977, and appellant's petition for a hearing by the Supreme Court was denied February 3, 1977.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.