TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 93-1206 |
| of | : |  |
|  | : | May 24, 1994 |
| DANIEL E. LUNGREN | : |  |
| Attorney General | : |  |
|  | : |  |
| GREGORY L. GONOT | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

THE HONORABLE JAN GOLDSMITH, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Does a member of a California trial jury have the right to refuse to apply a law he or she believes should not be applied in a particular case, an act commonly referred to as "jury nullification"?

CONCLUSION

A member of a California trial jury does not have the right to refuse to apply a law which he or she believes should not be applied in a particular case, an act commonly referred to as "jury nullification."

ANALYSIS

The question presented for resolution concerns an issue which, although seemingly laid to rest by the United States Supreme Court a century ago in the case of *Sparf* v. *United States* (1895) 156 U.S. 51, continues to be a matter of considerable debate throughout the country. At the crux of this debate is the recognized power of a criminal jury to return a verdict of acquittal which for constitutional reasons[1] cannot be "reversed, set aside, or inquired into" (*id.,* at p. 80), even though it may appear that the verdict was rendered "in the teeth of both law and facts" (*Horning* v. *District of Columbia* (1920) 254 U.S. 135, 138; see also *People* v. *Gottman* (1976) 64 Cal.App.3d 775, 780).

---

[1]"No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." (U.S. Const., 5th Amend.) "Persons may not twice be put in jeopardy for the same offense . . . ." (Cal. Const., art. I, § 15.) "In criminal cases the rights of a defendant . . . to not be placed twice in jeopardy for the same offense . . . shall be construed by the courts of this State in a manner consistent with the Constitution of the United States. . . ." (Cal. Const., art. I, § 24.)

It is when this power is used by a criminal jury to nullify application of a law in a particular case that we have the classic example of the phenomenon known as "jury nullification."[2] Does the right of jury nullification apply in California criminal trials? We conclude that it does not.

We begin with a brief examination of the role of a criminal jury as set forth in the *Sparf* decision.[3] After one hundred years, the court's ruling still reflects the common law pertaining to the operation of the criminal jury system in the United States. At issue in the case was the trial judge's instruction to the jury that the law would support only an acquittal or a conviction on the charge of murder and not a conviction of the offense of manslaughter which was inapplicable to the facts of the case; the defendants' request for a jury instruction on manslaughter was denied. Writing for the court in response to the writ of error, Justice Harlan undertook a comprehensive review of the relevant common law, encompassing prior decisions of the court on the subject, pronouncements of eminent jurists, decisions by various state courts, and legal precedents from England. These authorities led the court to the following conclusion:

> ". . . We must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court and apply that law to the facts as they find them to be from the evidence. Upon the court rests the responsibility of declaring the law; upon the jury, the responsibility of applying the law so declared to the facts as they, upon their conscience, believe them to be. Under any other system, the courts, although established in order to declare the law, would for every practical purpose be eliminated from our system of government as instrumentalities devised for the protection equally of society and of individuals in their essential rights. When that occurs our government will cease to be a government of law, and become a government of men. Liberty regulated by law is the underlying principle of our institutions." (*Sparf* v. *United States, supra*, 156 U.S. at 102-103.)

The court acknowledged that "an acquittal in a criminal case was final, even if the jury arbitrarily disregarded the instructions of the court on the law of the case . . . " (*id*., at p. 79), or, stated another way, that the jury had "the physical power to disregard the law, as laid down to them by the court"

---

[2]Jury nullification has generally been a factor only in the context of criminal trials because of the unique powers of a criminal jury. Civil trials, unlike criminal trials, do not afford the type of verdict which can serve to mask the law that was applied or the facts that were found. In addition, civil trials are not subject to the constitutional double jeopardy bar and therefore permit the trial court to enter a judgment notwithstanding the jury's verdict or to order a new trial because of juror misconduct or the rendering of a jury verdict which is contrary to law. (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 599-600 (conc. and dis. opn. of Bird, C.J.).) Of course, if a criminal jury's verdict is one of guilty, the constitutional bar is inapplicable, and a limited review of the jury's conduct, including misapplication of the law, is permitted. (See Evid. Code, § 1150; *People* v. *Cox* (1991) 53 Cal.3d 618, 694-696; *In re Stankewitz* (1985) 40 Cal.3d 391, 397-400; *People* v. *Hutchinson* (1969) 71 Cal.2d 342, 349-351.)

[3]In so doing, we leave to others a more thorough philosophical discussion of the concept of jury nullification and an exploration of its historical roots. (See, e.g., Scheflin & Van Dyke, *Merciful Juries: The Resilience of Jury Nullification* (1991) 48 Wash. & Lee L.Rev. 165: Scott, *Jury Nullification: An Historical Perspective on a Modern Debate* (1989) 91 W. Virginia L.Rev. 389; Christie, *Lawful Departures From Legal Rules: `Jury Nullification' and Legitimated Disobedience* (1974) 62 Cal. L.Rev. 1289.)

(*id*., at p. 74). However, it found that "though the jury have the power they had not the right to decide, that is, to adjudicate on both law and evidence." (*Id*., at p. 80.) The right to bring in a general verdict, which combines law with fact and is conclusive as to the prosecution, does not allow a juror to disregard the judge's statement of the law. Such regard would constitute a violation of the juror's oath. (*Id.,* at p. 87.) Further, the court declared, "where the matter is not controlled by express constitutional or statutory provisions, it cannot be regarded as the right of counsel to dispute before the jury the law as declared by the court." (*Id*., at p. 102.) The court's final observation was as follows:

> "The main reason ordinarily assigned for a recognition of the right of the jury, in a criminal case, to take the law into their own hands, and to disregard the directions of the court in matters of law, is that the safety and liberty of the citizen will be thereby more certainly secured. That view was urged upon *Mr. Justice* Curtis. After stating that if he conceived the reason assigned to be well founded, he would pause long before denying the existence of the power claimed, he said that a good deal of reflection had convinced him that the argument was the other way. He wisely observed that `as long as the judges of the United States are obliged to express their opinions publicly, to give their reasons for them when called upon in the usual mode, and to stand responsible for them, not only to public opinion, but to a court of impeachment, I can apprehend very little danger of the laws being wrested to purposes of injustice. But, on the other hand, I do consider that this power and corresponding duty of the court, authoritatively to declare the law, is one of the highest safeguards of the citizen. The sole end of courts of justice is to enforce the laws uniformly and impartially, without respect of persons or times or the opinions of men. To enforce popular laws is easy. But when an unpopular cause is a just cause; when a law, unpopular in some locality, is to be enforced, there then comes the strain upon the administration of justice; and few unprejudiced men would hesitate as to where that strain would be most firmly borne.' *United States* v. *Morris*, 1 Curt. 62, 63." (*Id*., at pp. 106-107.)

Although the *Sparf* decision made it clear that there was no right to jury nullification in the federal court system, the debate was rekindled in the 1960's when numerous anti-war activists sought to use the concept to secure acquittals. Such was the case in *United States* v. *Dougherty* (D.C. Cir. 1972) 473 F.2d 1113, where the defendants were convicted of crimes in connection with the ransacking of offices of a napalm manufacturer. On appeal, they argued that the trial judge had erred in refusing to instruct the jury of its right to acquit them without regard to the law. Judge Leventhal, writing for the majority, acknowledged the "jury's prerogative," but after reviewing the common law and examining the rationales both for and against a jury nullification instruction, concluded:

> ". . . An explicit instruction to a jury conveys an implied approval that runs the risk of degrading the legal structure requisite for true freedom, for an ordered liberty that protects against anarchy as well as tyranny." (*Id*., at p. 1137.)

Federal courts have continued to reject the contention that a defendant has a right to have the jury receive a nullification instruction from the trial judge (*United States* v. *Garcia-Rosa* (1st Cir. 1989) 876 F.2d 209, 226) or a nullification argument from his or her counsel (*United States* v. *Trujillo* (11th Cir. 1983) 714 F.2d 102, 106).

While it has been accepted since the *Sparf* decision that a federal jury has a duty to take the law as given by the trial judge, the United States Supreme Court has not specifically prohibited state criminal juries from determining the law as well as the facts. Indeed, the court has

noted that "the states have always enjoyed `wide leeway in dividing responsibility between judge and jury in criminal cases.'" (*Chaffin* v. *Stynchcombe* (1973) 412 U.S. 17, 22.)[4] Nevertheless, in California the issue of jury nullification has been concluded along the same lines as those which apply in federal court. Penal Code section 1126 provides:

> "In a trial for any offense, questions of law are to be decided by the court, and questions of fact by the jury. Although the jury has the power to find a general verdict, which includes questions of law as well as of fact, they are bound, nevertheless, to receive as law what is laid down as such by the court."

A criminal jury in California is directed, in pertinent part, as follows:

> "Ladies and Gentlemen of the Jury:
>
> "You have heard all the evidence [and the arguments of the attorneys], and now it is my duty to instruct you on the law that applies to this case.
>
> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> "You must base your decision on the facts and the law.
>
> ". . . you must apply the law that I state to you, to the facts, as you determine them, and in this way arrive at your verdict . . . .
>
> "You must accept and follow the law as I state it to you, whether or not you agree with the law. If anything concerning the law said by the attorneys in their arguments or at any other time during trial conflicts with my instructions on the law, you must follow my instruction.
>
> "You must not be influenced by pity for a defendant or by prejudice against [him] [her]. . . . You must not be influenced by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling. Both the People and the defendant have a right to expect that you will conscientiously consider and weigh the evidence, apply the law, and reach a just verdict regardless of the consequences." (CALJIC No. 1.00 (5th ed. 1988).)

> As early as 1872, in a case cited in the *Sparf* decision, it was stated by the California Supreme Court: "In this State it is so well settled as no longer to be open to debate, that it is the duty of a jury in a criminal case to take the law from the court." (*People* v. *Anderson* (1872) 44 Cal. 65, 70.) Shortly before the *Sparf* decision, the California Supreme Court declared:

> "Of course, a jury, in rendering a general verdict in a criminal case, necessarily has the naked *power* to decide all the questions arising on the general issue of not guilty; but it only has the right to find the facts, and apply to them the law as given by the court." (*People* v. *Lem You* (1893) 97 Cal. 224, 228.)

---

[4]We note that such division of responsibility between judge and jury goes to the question of who has the power to declare the law. In some states, the jury is granted that authority by constitutional provision. This is different, however, from the question of whether the jury may disregard the law as given by the judge or as the jury itself has determined it to be. (See Simson, *Jury Nullification in the American System: A Skeptical View* (1976) 54 Tex. L.Rev. 488, 503-507.)

This rule was reiterated by the court in the middle of this century. (*People* v. *Powell* (1949) 34 Cal.2d 196, 205, fn. 2.)

The issue of jury nullification was again examined in the case of *People* v. *Dillon* (1983) 34 Cal.3d 441. Justice Kaus suggested in a concurring opinion (*id*., at pp. 490-493) that a jury may be instructed that it has the power to nullify a rule or result which it considers unjust. This view was specifically rejected in the lead opinion:

> "The separate opinion of Justice Kaus offers an additional reason for the result reached in this opinion. But his route -- whether described as nullification or civil disobedience -- impliedly reopens the classic debate as to whether society has created courts of law or courts of justice. Whatever the result of that exercise, it cannot seriously be urged that, when asked by the jurors, a trial judge must advise them: `I have instructed you on the law applicable to this case. Follow it or ignore it, as you choose.' Such advice may achieve pragmatic justice in isolated instances, but we suggest the more likely result is anarchy." (*Id*., at pp. 487-488, fn. 39.)

Two years later in *In re Stankewitz, supra,* 40 Cal.3d 391, the court observed:

> "In our system of justice it is the trial court that determines the law to be applied to the facts of the case, and the jury is `bound . . . to receive as law what is laid down as such by the court.' (Pen. Code, § 1126.) `Of course, it is a fundamental and historic precept of our judicial system that jurors are restricted solely to the determination of *factual* questions and are bound by the law as given them by the court. They are not allowed either to determine what the law *is* or what the law *should be*.' (*Noll* v. *Lee, supra*, 221 Cal.App.2d at pp. 87-88, italics in original.) In the case at bar the court correctly instructed the jurors at the very beginning of its charge that `[y]our . . . duty is to apply the rules of law that I state to you to the facts as you determine them,' and that `[y]ou must accept and follow the rules of law as I state them to you." (*Id.*, at p. 399.)

In *People* v. *Partner* (1986) 180 Cal.App.3d 178, the appellant argued that the trial court should have instructed the jury on "the power of a jury to nullify what it considers an unjust law." (*Id*., at p. 185.) In rejecting this contention, the Court of Appeal stated:

> ". . . [T]he courts which have recently considered the question have uniformly concluded that although a jury may occasionally exercise a raw power to return a verdict more favorable to the defendant than warranted by the evidence and the law, this power should not be legitimized in instructions to the jury.
>
> "We agree that the jury should not be instructed on so-called jury nullification. `"[A] jury, in rendering a general verdict in a criminal case, necessarily has the naked *power* to decide all the questions arising on the general issue of not guilty; but it only has the *right* to find the facts, and apply them to the law as given by the court."' (*People* v. *Powell* (1949) 34 Cal.2d 196, 205, fn. 2, first italics in original, second italics ours.)
>
> "The jury should not be instructed that it may disregard the law. (See *People* v. *Gottman* (1976) 64 Cal.App.3d 775, 781-782.) `An explicit instruction to a jury conveys an implied approval that runs the risk of degrading the legal structure requisite for true freedom, for an ordered liberty that protects against anarchy as well

as tyranny.' (*United States* v. *Dougherty* (D.C. Cir. 1972) 473 F.2d 1113, 1137.)" (*Id*., at p. 186; fn. omitted.)

Given the foregoing California authorities (see also *People* v. *Williams* (1986) 180 Cal.App.3d 992, 925), there can be little doubt that the courts of this state have been, and still are, in full accord with the federal rule.

What, then, is to be made of the argument that on occasion a member of a jury may legitimately disregard or nullify the judge's instruction when he or she considers the application of the law to be unjust in that particular case? We believe that such notion is incompatible with the fundamental precept that ours is a government of laws, not a government of men. At one time, when laws were not necessarily democratically created, the nullification argument may have had some merit.[5] Today, however, the legislative process, while far from perfect, affords extensive opportunity for the general citizenry, as well as organized constituencies, to participate either directly by means of legislative hearings or indirectly through their democratically elected representatives. The result is legislation which is a reasonable reflection of the will of the people; if not, it may be changed or undone through the same process.

A trial jury, on the other hand, is not the appropriate forum for creating or abrogating laws under our system of government. There is no assurance that a somewhat randomly assembled group of 12 individuals, albeit "peers" of the defendant and reliable finders of fact, would or could reflect the will of the people generally as to whether a particular law should or should not be applied. The decision to have the law applied was previously made at the time it was duly created by the branch of government which is exclusively charged with passing laws. It is not, and cannot be, the province of the jury to declare in effect that a duly enacted law should not be applied, even if only in an isolated case.

Neither is it lawful or appropriate for a juror in a criminal trial to decide whether or how to apply the law on the basis of his or her personal interpretation of the statute in question. Usually, the interpretation to be given a statute is not a matter of first impression; the trial court is likely to have the benefit of a number of decisions by higher courts which may have established the constitutionality of the statute and its proper application under a variety of circumstances. The process of appellate review is an exacting one and affords a far preferable means of statutory interpretation than the ad hoc analysis of one or more jurors. Even where there is little case law for the trial court to rely on, it is imperative that the jury apply the law as handed down by the judge. The law cannot be properly developed through appellate review if it is uncertain whether the law applied at trial was that given by the judge or that conjured up by individual members of the jury.

Adherence to the precept of judge given law in no way deprives the jury of the ability to enter a general verdict of acquittal if the evidence does not support the charges brought against the defendant. If, on rare occasion, application of the law in a particular case appears to produce an unduly harsh result, the rectifying mechanism provided by the Constitution is that of reprieve, pardon, or commutation. (Cal. Const., art. I, § 8, subd. (a).)

Thus, in both our system of justice and our system of government generally, there is no recognized legal right for a member of a California trial jury to disregard or nullify a law which

---

[5] We note the observation of one commentator that jury nullification "has never been recognized in the English tradition, and in America it existed only as a drastic reaction to an unrepresentative government [during the colonial period.]" (Scott, *Jury Nullification: An Historical Perspective on a Modern Debate* (1989) 91 W.Va. L.Rev. 389, 419.)

he or she believes should not be applied in a particular case.[6] Pursuant to Penal Code section 1126, a jury member has an affirmative legal duty to apply the law as determined by the court.

* * * * *

---

[6]The Sixth Amendment right to trial by jury does not imply a concomitant right of the jury to ignore applicable law.