[Crim. No. 10470. First Dist., Div. Two. July 26, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
ASHTON PIJAL, Defendant and Appellant.

## COUNSEL

Fred Caploe, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KANE, J.—Defendant Ashton Pijal appeals from a judgment of conviction entered on a jury verdict finding him guilty of unlawfully furnishing and selling a restricted dangerous drug in violation of Health and Safety Code section 11912.

The pertinent facts may be summarized as follows: On May 19, 1971, San Francisco Police Officer Moroschok ("Moroschok") was working as an undercover narcotic agent attempting to make buys of narcotics and/or dangerous drugs. He was accompanied by a police informant, named Dotty, who had been introduced to him by his supervisor, Officer Hendahl. At approximately 5 p.m., while in his Volkswagen with Dotty, near the intersection of Eddy and Hyde Streets in San Francisco, Moroschok spotted appellant on the sidewalk. He stopped his car at the curb and

called appellant to his vehicle. After appellant and Dotty, who had met several times before, greeted each other, Moroschok asked appellant if he was "holding."[1] Appellant replied that he was and expressed his willingness to sell, but showed reluctance to do so on the street because of fear of being caught by the police. Thereupon Moroschok invited him into his automobile. Getting into the rear seat of the car, appellant asked Moroschok how many tablets he wanted. Moroschok told him $10 worth. Appellant counted 10 tablets out of a clear plastic bottle with a prescription label on it. After Moroschok paid him $10 appellant exited the car and left. Moroschok then drove around the corner, dropped Dotty off, and returned to the Hall of Justice. At the Hall of Justice he marked two of the tablets with his star number and initial and placed them in an envelope. A later laboratory test revealed that the tablets contained Desoxyn (a trademark for preparations of methamphetamine hydrochloride to which the parties stipulated at the trial). Subsequently, Moroschok identified appellant from a series of mug shots; and on May 31, 1971, Officer Deters obtained an arrest warrant and arrested appellant.

Appellant, testifying on his own behalf, offered an alibi defense. He insisted that at the time of the commission of the crime charged he was either at a local restaurant or at the office of his doctor, and denied selling Moroschok a dangerous drug at any time or even seeing him on May 19, 1971. Appellant, however, admitted that over a period of 30-odd years he had been convicted on a number of occasions for narcotic violations, that he knew what narcotics were, and also that he knew that Desoxyn is an amphetamine preparation which is considered a dangerous drug.

### Denial of Probation

The record discloses that appellant applied for probation which was denied by the trial court because of the long record of prior convictions. Based upon a colloquy during which the trial judge remarked that he was not aware of the penalty provisions of Health and Safety Code section 11912, under which appellant was convicted, appellant contends that the trial court abused its discretion because it failed to consider all the facts pertinent to the determination of his application for probation. There is no merit in this contention.

At the time relevant to the instant case, section 1203 of the Penal Code read in part that "in every felony case in which the defendant is eligible for probation, before any judgment is pronounced, and whether or not an application for probation has been made, the *court must imme-*

---

[1]"Holding" is a street term referring to whether a person has a narcotic or dangerous drug in his possession and/or is willing to sell it.

*diately refer the matter to the probation officer to investigate* and to report to the court, at a specified time, *upon the circumstances surrounding the crime* and concerning the defendant *and his prior record, which may be taken into consideration either in aggravation or mitigation of punishment.* . . . At the time or times fixed by the court, the *court must hear* and determine *such application,* if one has been made, or in any case the suitability of probation in the particular case, and in connection therewith *must consider any report of the probation officer,* and *must make a statement that it has considered such report* which must be filed with the clerk of the court as a record in the case. *If the court shall determine that there are circumstances in mitigation of punishment prescribed by law,* or that the ends of justice would be subserved by granting probation to the defendant, the *court* shall have *power in its discretion to place the defendant on probation . . .*" (italics added).

Appellant concedes, as he must, that the trial court minutely complied with the foregoing provisions of the statute. Thus, it is undisputed that the case was referred to the probation officer who made the necessary investigation and filed his report with the court. In addition, there was a hearing on appellant's application in which the trial court did consider the probation officer's report, and in the exercise of its sound discretion rejected the probation officer's recommendation, taking into consideration as aggravating circumstances the eleven prior convictions admitted by appellant. Appellant's assertion that the trial court should have considered not only the foregoing factors but also the punishment under the new conviction is entirely groundless. In the language of the statute it is not the punishment (which is prescribed by law and over the duration of which the court has no power) (*In re Minnis* (1972) 7 Cal.3d 639 [102 Cal.Rptr. 749, 498 P.2d 997]), but the *circumstances* in mitigation of such punishment which must be taken into account by the court in granting or denying the probation. The cases likewise emphasize that the trial court must not decide the question of probation until it is in possession of the relevant *facts,* especially those contained in the probation report (*People* v. *Wade* (1959) 53 Cal.2d 322, 338 [1 Cal.Rptr. 683, 348 P.2d 116]).

We further observe that due to his prior 11 felony convictions appellant fell within the category where denial of his application for probation, as a general rule, was mandatory under the statute[2] and it could have been

---

[2]At the time of the offense section 1203 of the Penal Code provided inter alia that probation shall not be granted to any defendant unless the court shall be satisfied that he has not been twice previously convicted of felony in this state, nor twice previously convicted in any other place or places of public offenses which would

granted, if at all, only in an "unusual" case. Since appellant failed to present such an unusual case his application should have been denied as a matter of law. The trial court, however, out of sheer grace and clemency, struck appellant's prior convictions thereby making it possible for his application for probation to be considered at all. Under these circumstances, appellant's claim that the trial court abused its discretion in denying him probation, which should have been rejected as a matter of law in the first place, is entirely unfounded and borders on frivolity.

### Pretrial Identification

■ Appellant next asserts that the pretrial photographic identification by Moroschok was illegal and resulted in a denial of his right to due process. Appellant predicates his claim on the single circumstance that the identification procedure took place after "the arbitrary delay of about a week" following the commission of the crime. Appellant's argument is obviously meritless.

■ It is established beyond dispute that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on due process grounds only if the photographic identification procedure was so *impermissibly suggestive* as to give rise to a *very substantial likelihood of irreparable misidentification* (*Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967]; *People* v. *Hicks* (1971) 4 Cal.3d 757, 764 [94 Cal.Rptr. 393, 484 P.2d 65]). In resolving whether the pretrial identification was fair or unduly suggestive, not a single factor but the totality of the circumstances must be considered (*Simmons* v. *United States, supra,* at p. 383 [19 L.Ed.2d at p. 1253]; *People* v. *Bauer* (1969) 1 Cal.3d 368, 374 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]; *People* v. *Faulkner* (1972) 28 Cal.App.3d 384, 391 [104 Cal.Rptr. 625]). While the lapse of time between the alleged act and the identification may be a factor, there are additional curcumstances which have equal—or even greater—weight upon the issue. Thus, it is of paramount significance whether or not the photographic display was fair or "rigged" (*People* v. *Pedercine* (1967) 256 Cal.App.2d 328, 335 [63 Cal.Rptr. 873]); the police made suggestive comments to the identifying witness; the witness had ample opportunity to, and did, observe the defendant because they had seen each other more than once, the encounter between them was not only a brief glimpse but of longer duration, the lighting conditions were adequate, the witness had reason to recall the

have been felonies if committed in this state. In unusual cases, otherwise subject to the preceding paragraph, in which the interests of justice would best be served thereby, the judge may, with the concurrence of the district attorney, grant probation.

face of the defendant, etc. (cf. *Simmons* v. *United States* and *People* v. *Bauer,* both *supra; People* v. *Martin* (1970) 2 Cal.3d 822, 831 [87 Cal. Rptr. 709, 471 P.2d 29]; *People* v. *Caruso* (1968) 68 Cal.2d 183, 187-189 [65 Cal.Rptr. 336, 436 P.2d 336]).

■ When viewed in light of the foregoing principles, the instant case leaves no room for doubt that there was no undue suggestiveness and appellant was not mistakenly identified by Moroschok despite the claimed one-week delay in identification.

Thus, the record abundantly proves that the officer identified appellant from over two dozen photos without any suggestion by the police and without hesitation; that appellant was not singled out by the police for identification (*People* v. *Faulkner, supra*); that the officer as an undercover agent working in that area with a definite errand had good reason to recall appellant; that he had ample opportunity to observe him, having seen appellant three or four times previously and also earlier in the morning of the commission of the crime; and that the encounter between them was of longer duration, covering a transaction which took place in the officer's car under normal lighting circumstances. Since Moroschok saw appellant several times, picked him up during daylight hours, bargained with him face to face, and observed him sitting, standing, walking, bending and from every side and angle (cf. *People* v. *Carroll* (1970) 4 Cal.App.3d 52, 55-56 [84 Cal.Rptr. 60]), the probability of mistaken identification should be ruled out as a matter of law.

In view of our conclusion, we need not decide the additional issues of whether the circumstances above enumerated would have been sufficient to purge the primary taint, if any, and to justify the legality of appellant's in-court identification under the independent source doctrine (*People* v. *Martin, supra*), and/or whether the in-court identification would be unassailable on appeal by reason of appellant's failure to object to the officer's in-court identification (cf. *People* v. *Carroll, supra; People* v. *Almengor* (1969) 268 Cal.App.2d 614, 616-618 [74 Cal.Rptr. 213]; *People* v. *Armstrong* (1968) 268 Cal.App.2d 324, 326 [74 Cal.Rptr. 37]).

## Jury Instructions

With regard to the jury instructions appellant assigns three errors. First, he contends that the court erroneously instructed the jury that appellant's prior narcotics convictions could be considered not only for impeachment purposes, but also with respect to his knowledge and intent. Second, appellant argues that the failure to instruct on the lesser included offense of unlawful possession deprived him of his constitutional right to have the jury determine every material issue presented by the evidence. Ap-

pellant's third contention is that the trial court's failure to instruct *sua sponte* on the defense of entrapment was an error of constitutional magnitude. We find no merit to any of these arguments.

(a) ■ Appellant's first contention can be disposed of summarily. It is well settled that evidence of other crimes is admissible where it tends to show guilty *knowledge,* motive, *intent,* or presence of a common design or plan (Evid Code, § 1101, subd. (b); *People* v. *Sam* (1969) 71 Cal.2d 194, 204 [77 Cal.Rptr. 804, 454 P.2d 700]; *People* v. *Perkins* (1970) 7 Cal.App.3d 593, 602 [86 Cal.Rptr. 585]). Since appellant's knowledge of the narcotic contents of the drug and his intent to sell were at issue, evidence of his prior narcotic offenses was clearly admissible to show his guilty knowledge, motive and intent, and the court properly instructed the jury to this limited effect of the evidence[3] (*People* v. *Hill* (1971) 19 Cal.App.3d 306, 319-320 [96 Cal.Rptr. 813]; see also *People* v. *Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Griffin* (1967) 66 Cal.2d 459 [58 Cal.Rptr. 107, 426 P.2d 507]).

(b) ■ Adverting to appellant's second contention, we reiterate the basic rule that in criminal cases instructions are always to be given or refused with reference to the facts introduced before the jury (*People* v. *McCoy* (1944) 25 Cal.2d 177, 188 [153 P.2d 315]). Accordingly, it is well established that the trial court must give a *sua sponte* instruction on a lessor included offense only when the evidence adduced at the trial calls for and justifies it (*People* v. *Cooper* (1968) 268 Cal.App.2d 34, 39 [73 Cal.Rptr. 608]). ■ The evidence here is utterly devoid of any indication that the possession of the drug by appellant was other than lawful. Thus, appellant affirmatively stated throughout his testimony that he had a prescription for codeine tablets and Desoxyn which was prescribed for him by his doctor for injuries and bone complaints. Appellant's testimony was corroborated also by Moroschok who testified that the Desoxyn tablets were taken out of a clear plastic bottle with a prescription label on it. Since the uncontradicted evidence of record clearly establishes that, if at all, appellant was guilty of the higher offense of sale, it was not only unnecessary to give an instruction on the lesser included offense of possession but by doing so the trial court would have committed error in violation of the fundamental rule that the instructions must be pertinent

---

[3]The instruction complained of reads as follows: "Now, among the felonies as to which the record shows the defendant has been convicted were several narcotic charges. *To that extent 'prior conviction' may be considered by you with respect to knowledge* that the substance was in fact a narcotic . . . *and also to the intent* which is . . . a necessary element of the offense with which the defendant is charged." (Italics added.)

to the evidence in the case at bar (*People* v. *Morrison* (1964) 228 Cal. App.2d 707, 712-713 [39 Cal.Rptr. 874]; *People* v. *Ramirez* (1958) 163 Cal.App.2d 590, 594 [329 P.2d 499]).

(c) ▮▮▮ Appellant's third contention that the trial court should have given a *sua sponte* instruction on entrapment is likewise ill-founded and cannot stand.

▮▮ It is firmly settled in California that entrapment is an affirmative defense which must be raised and proved *by the defendant* in the trial court (*People* v. *Moran* (1970) 1 Cal.3d 755, 760-761 [83 Cal.Rptr. 411, 463 P.2d 763]; *In re Dennis M.* (1969) 70 Cal.2d 444, 457 fn. 10 [75 Cal.Rptr. 1, 450 P.2d 296]; *People* v. *Valverde* (1966) 246 Cal. App.2d 318 [54 Cal.Rptr. 528]). If not properly asserted by defendant at trial, it cannot be raised for the first time on appeal (*People* v. *Hawkins* (1962) 210 Cal.App.2d 669, 671-672 [27 Cal.Rptr. 144]; *People* v. *Valdez* (1961) 188 Cal.App.2d 750 [10 Cal.Rptr. 664]; *People* v. *Branch* (1953) 119 Cal.App.2d 490 [260 P.2d 27]).

Notwithstanding these clear pronouncements and recognizing that no court had ever before "expressly held that an entrapment instruction must be given *sua sponte*," the court in *People* v. *Grantham* (1972) 26 Cal. App.3d 661, 665 [103 Cal.Rptr. 262], found such a requirement to exist based on a dictum in *People* v. *Perez* (1965) 62 Cal.2d 769, 775 [44 Cal. Rptr. 326, 401 P.2d 934], that "When the evidence does show such conduct [entrapment], the court has a duty to root its effects out of the trial upon its own initiative if necessary." For the reasons which follow, we are unable to accept the conclusion reached in *Grantham,* and disagree with it.

The fundamental weakness in utilizing the quoted dictum as a springboard to a *sua sponte* obligation is that the *Perez* statement is itself a paraphrasing of a dictum contained in the concurring (minority) opinion of Mr. Justice Roberts in *Sorrells* v. *United States* (1932) 287 U.S. 435, 453, 457 [77 L.Ed. 413, 423, 425, 53 S.Ct. 210, 86 A.L.R. 249], in which an eloquent argument is made that the question of entrapment should be resolved by the court as a matter of law in every case. As pointed out in that opinion, "The doctrine [entrapment] rests, rather, on a fundamental rule of public policy. The protection of its own functions and the preservation of the purity of its own temple belongs only to the court. It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law. The violation of the principles of justice by the entrapment of the unwary into crime should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention. Quite properly it may discharge the prisoner upon a writ of *habeas corpus.*

Equally well may it quash the indictment or entertain and try a plea in bar. But its powers do not end there. Proof of entrapment, at any stage of the case, requires the court to stop the prosecution, direct that the indictment be quashed, and the defendant set at liberty. If in doubt as to the facts it may submit the issue of entrapment to a jury for advice. But whatever may be the finding upon such submission the power and the duty to act remain with the court and not with the jury."

Notwithstanding the soundness of this argument, the majority view of the United States Supreme Court, as first expressed in *Sorrells* and reaffirmed just a few months ago (*United States* v. *Russell* (1973) 411 U.S. 423, 433 [36 L.Ed.2d 366, 374, 93 S.Ct. 1637]) is that the essential element of the defense of entrapment is "the defendant's predisposition to commit the crime."

The court in *Russell* specifically rejected the argument that the defense of entrapment is of constitutional dimension. It also rejected the suggestion that the exclusionary rule principles of due process be applied to the defense of entrapment. In doing so, the court noted that "Several decisions of the United States district courts and courts of appeals have undoubtedly gone beyond this Court's opinions in *Sorrells* and *Sherman* in order to bar prosecutions because of what they thought to be for want of a better term 'overzealous law enforcement.' But the defense of entrapment enunciated in those opinions was not intended to give the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it did not approve. The execution of the federal laws under our Constitution is confided primarily to the Executive Branch of the Government, subject to applicable constitutional and statutory limitations and to judicially fashioned rules to enforce those limitations. We think that the decision of the Court of Appeals in this case quite unnecessarily introduces an unmanageably subjective standard which is contrary to the holdings of this Court in *Sorrells* and *Sherman*.

"Those cases establish that entrapment is a relatively limited defense. It is rooted not in any authority of the Judicial Branch to dismiss prosecutions for what it feels to have been 'overzealous law enforcement,' but instead in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a prescribed offense, but who was induced to commit them by the government." The court then concluded that "It is only when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play."

Ironically, despite the fact that in 1959 the California Supreme Court adopted the government policy and police conduct theory of the defense advocated by Mr. Justice Roberts in *Sorrells* (see *People* v. *Benford* (1959) 53 Cal.2d 1, 9 [345 P.2d 928]), the issue of entrapment has continued to be left to the trier of fact under California decisions.

Strong and persuasive arguments have been made that since the defense of entrapment is based on policy considerations rather than on the issue of guilt or innocence, its determination should be made by the court (*People* v. *Moran, supra*, p. 763, Traynor, C. J., dissenting). This would truly amount to a "rooting out" process which would be meaningful to law enforcement agencies. As former Chief Justice Traynor has pointed out, *"A jury verdict of guilty or not guilty tells the police nothing about the jury's evaluation of the police conduct.* A verdict of guilty may mean that the jury did not believe the defendant's testimony that would have established entrapment. It may also mean that the jury did not believe that the conduct created a substantial risk of inducing one not ready to commit the offense into doing so. Since the defendant may assert entrapment and also deny that he committed the crime (*People* v. *Perez* (1965) 62 Cal.2d 769, 775-776 [44 Cal.Rptr. 326, 401 P.2d 934]), a 'not guilty' verdict may also shed no light on the jury's assessment of police conduct. Moreover, even when the verdict settles the issue of entrapment in the particular case, it 'cannot give significant guidance for official conduct for the future. Only the court, through the gradual evolution of explicit standards in accumulated precedents, can do this with the degree of certainty that wise administration of criminal justice demands.' (*Sherman* v. *United States, supra*, 356 U.S. 369, 385 [2 L.Ed.2d 848, 858, 78 S.Ct. 819] (Frankfurter, J., concurring); accord, Model Pen. Code, § 2.13(2) (Proposed Official Draft 1962).) *In other areas involving police conduct, we have recognized the paramount importance of committing the assessment of such conduct to the court. Thus, the trial court, subject to appropriate appellate review, determines the admissibility of confessions and other evidence claimed to have been illegally obtained. (People* v. *Gorg* (1955) 45 Cal.2d 776, 780-781 [291 P.2d 469]; Pen. Code, § 1538.5, subd. (c); Evid. Code, § 405; see Witkin, Cal. Evidence (2d ed. 1966) § 492, pp. 462-463.) It should also determine the issue of entrapment." (P. 766; italics added.)

It is thus apparent that the concept of "rooting out" is, in turn, predicated upon the theory that the function rests with the court. "Proof of entrapment, at any stage of the case, requires the court to stop the prosecution, direct that the indictment be quashed, and the defendant set at liberty." (*Sorrells* v. *United States, supra*, p. 457.)

If this were the rule in California—and we agree with former Chief

Justice Traynor that it should be—the obligation would clearly rest upon the trial judge to *sua sponte* determine whether entrapment did or did not occur.

But until such time as that duty is placed upon the trial court by a pronouncement of our Supreme Court, the rule continues that entrapment is a specific affirmative defense which must be raised by the defendant.

■ Under well established rule, the trial court must instruct the jury *sua sponte* only on the general principles of law relevant to the issues raised by the evidence, but *need not so instruct on specific points* developed at the trial (*People* v. *Hood* (1969) 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Castillo* (1969) 70 Cal.2d 264, 270-271, fn. 5 [74 Cal.Rptr. 385, 449 P.2d 449]; *People* v. *Putnam* (1942) 20 Cal.2d 885, 890 [129 P.2d 367]). The general principles of law governing the case are those principles *closely and openly connected with the facts* before the court, *and* which are *necessary for the jury's understanding of the case* (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390]; *People* v. *Wilson* (1967) 66 Cal.2d 749, 759 [59 Cal. Rptr. 156, 427 P.2d 820]; *People* v. *Wade, supra,* at p. 334.)

It is apparent that the defense of entrapment is a specific point to be developed at the trial. As the cases uniformly emphasize, entrapment is an affirmative defense which must be established by defendant by way of producing evidence that he was an unwilling violator without a preexisting criminal intent who was ensnarled and decoyed by the government into the commission of the crime by repeated appeal, persuasion and pressure (*People* v. *Benford, supra,* 53 Cal.2d 1, 10; *People* v. *Bourland* (1966) 247 Cal.App.2d 76, 93-94 [55 Cal.Rptr. 357]; *People* v. *Farnum* (1966) 242 Cal.App.2d 310, 314 [51 Cal.Rptr. 327]). The lack of preexisting criminal intent, to wit, that the defendant was an "unwary innocent" rather than an "unwary criminal" (*Sherman* v. *United States* (1958) 356 U.S. 369, 372 [2 L.Ed.2d 848, 851, 78 S.Ct. 819]) must be specifically proved. In the absence of such proof, the entrapment defense cannot be inferred from the sheer commission of the crime even if there is additional evidence that the government afforded opportunity to, or encouraged or facilitated its commission (*People* v. *Benford; People* v. *Hawkins,* both *supra; People* v. *Goree* (1966) 240 Cal.App.2d 304, 309 [49 Cal.Rptr. 392]).

■ It is equally firmly settled that while an instruction when requested must be given if there is *any* evidence deserving of any consideration whatever—no matter how incredible that evidence may be (*People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281])—as a rule the trial court

must instruct on its own motion only where there is *substantial* evidence supporting the instruction (*People* v. *St. Martin, supra*). Although as a legal theory it is possible that defendant may deny every element of the crime, yet allege that such acts as he did commit were induced by law enforcement officers (*People* v. *Perez, supra*), *in a case where defendant denies any complicity in the commission of the crime and bases his defense solely on alibi,* it becomes a practical impossibility for him to prove the necessary elements of entrapment by the required substantial evidence. It is readily discernible that in such a case the evidence of entrapment, if any, of necessity must be abstruse, arcane and remote. Needless to say, the trial court is not required to anticipate every possible theory that may fit the facts or fill in every time a litigant or his counsel fails to discover some obscure but possible theory of the facts. As the court put it in *People* v. *Cram* (1970) 12 Cal.App.3d 37, 41 [90 Cal.Rptr. 393], "There must be *substantial* evidence on the issue sufficient to alert the trial judge that it is an issue in the case. There is no duty on the trial court to dissect the evidence in an effort to develop some arcane, remote or nebulous theory of the evidence on which to instruct. The duty of the trial court involves percipience—not omniscience."

The evidence of record well illustrates the problem arising from an eventual pursuit of the contradictory defenses of alibi and entrapment. Thus, it clearly appears that appellant who, out of tactical considerations, elected the alibi defense was, as a matter of course, prevented from presenting evidence relative to the defense of entrapment. By denying the commission of the crime or even seeing Moroschok, appellant foreclosed himself from producing evidence in order to negate the preexistence of his criminal intent and to prove that he was induced to commit the crime solely by the officer. Appellant's testimony, of necessity, had to be limited to remote circumstances, such as the conversations with police informer Dotty, which either preceded or followed the crime charged, related solely to an eventual deal with Dotty, and in no way involved the transaction with Moroschok which constituted the crime at issue. This sort of evidence, as a matter of law, falls far short of satisfying the substantial evidence requirement and therefore fails to support a *sua sponte* court instruction.

 We conclude that since the defense of entrapment is not of constitutional dimension (*United States* v. *Russell, supra*), but rather is a specific point to be developed by the defendant as an affirmative defense and that its assertion or nonassertion is clearly a matter of tactics and strategy, the trial court is under no *sua sponte* duty to instruct the jury thereon.

## Usable Quantity of Drug

 Appellant additionally argues that the conviction is not supported by substantial evidence because no proof was introduced to show that the tablets sold by appellant contained amphetamine in an amount sufficient to be used as a drug, and, furthermore, that the evidence failed to substantiate that appellant knew that the tablets contained a usable amount of drug. Both of these contentions of appellant, however, are refuted by the record.

Thus, the record discloses that all 10 tablets sold to Moroschok were enclosed in a Manila envelope which was offered in evidence by the prosecution. In objecting to its admission, defense counsel argued as follows: "Your Honor, I will object to the Manila envelope . . . we are not raising any issue as to the objects that the witness allegedly took on that date. We are not objecting to any chain of command to the chemist to show that it is a *dangerous* drug . . ." (italics added). Later, again defense counsel declared: "I object to the whole envelope . . . *I am not questioning these particular tablets* he says he got from the defendant *are of the type of restricted dangerous drugs . . . . We stipulate to that."* (Italics added.)

 It is, of course, well established that the defendant is bound by the stipulation or open admission of his counsel and cannot mislead the court and jury by seeming to take a position on issues and then disputing or repudiating the same on appeal (*People* v. *Peters* (1950) 96 Cal.App.2d 671, 677 [216 P.2d 145]; Witkin, Cal. Evidence (2d ed. 1966) § 505, at p. 476).

 In sharp conflict with his assertion that he did not know that the tablets were dangerous drugs, the record divulges that during direct examination the following colloquy took place between appellant and his counsel: "Q. Now, you know what narcotics are? A. Yes sir, I do, sir. Q. And you know what Desoxyn is? A. Yes, sir, I do. Q. What is it? A. Amphetamine drug . . . Q. You know what Desoxyn is. It's an amphetamine? A. Yes, sir. Q. *That's a dangerous drug,* isn't it? A. *Considered as, yes, sir. . . . Q. You are charged with selling a dangerous drug. Do you know what that means?* A. Yes, sir." (Italics added.)

## Adequacy of Representation by Counsel

Appellant's final argument that he was denied the effective assistance of counsel because his counsel failed to request an instruction on the lesser included offense of unlawful possession, failed to move for a directed verdict for insufficiency of evidence, and did not provide adequate pro-

tection at the probation hearing, can be summarily disposed of. As appears above, in each of these matters we have ruled against appellant. It follows, therefore, that appellant cannot claim with reason that as a result of inadequate representation by counsel he was deprived of a right to which he was not entitled as a matter of law. Finally, we observe that appellant himself admits that he cannot complain of the tactical decisions made by his trial counsel (see also *People* v. *Roth* (1964) 228 Cal.App.2d 522, 530 [39 Cal.Rptr. 582]).

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied August 24, 1973, and appellant's petition for a hearing by the Supreme Court was denied October 3, 1973.