Filed 2/10/15  P. v. Segura CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTONIO HIGAREDA SEGURA,<br><br>Defendant and Appellant. | F066938<br><br>(Super. Ct. No. MCR037255)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Kane, Acting P.J., Poochigian, J. and Peña, J.

Defendant Antonio Higareda Segura entered into a plea agreement with a *Cruz* waiver,[1] which the trial court later determined he violated by illegally reentering the country. On appeal, he contends (1) the trial court erred by failing to make an explicit finding that his violation of the *Cruz* waiver was willful and (2) the trial court's finding that he violated the *Cruz* waiver was not supported by substantial evidence. We affirm.

## BACKGROUND

On July 4, 2009, an officer saw defendant driving a vehicle without a windshield. The officer followed defendant with lights activated. Defendant fled and a high-speed chase ensued. Defendant eventually stopped and ran away. When the officer caught up to him, defendant used force and violence to resist arrest, injuring the officer.

Defendant was charged with various crimes and initially pled not guilty. On February 19, 2010, he informed the trial court he wished to change his plea to guilty. The court explained that according to the plea agreement, he would be released pending sentencing and would be deported by United States Immigration and Customs Enforcement (ICE). The agreement was conditioned on his obeying all laws, including laws that forbade him from illegally returning to the United States after his deportation. If he violated the terms of the *Cruz* waiver and illegally returned to the United States, the stipulated term of six years four months would be imposed. If ICE failed to deport him, he would be required to appear in the probation department within 24 hours of his release. Under these terms, defendant pled guilty to felony evading an officer (Veh. Code, § 2800.2, subd. (a)), attempting to deter an executive officer by threats (Pen. Code, § 69),[2] and inflicting injury on a peace officer (§ 243, subd. (c)(2)), and he admitted serving two prior prison terms (§ 667.5, subd. (b)). On his plea agreement form, he wrote

---

[1]    As we explain below, a *Cruz* waiver allows a defendant to waive his right to be sentenced pursuant to his plea agreement. (*People v. Cruz* (1988) 44 Cal.3d 1247, 1254, fn. 5 (*Cruz*); *People v. Masloski* (2001) 25 Cal.4th 1212, 1219-1224 (*Masloski*).)

[2]    All statutory references are to the Penal Code unless otherwise noted.

that the plea was with a *Cruz* waiver and deportation. His release papers, which he also signed, stated that his release was conditioned on his obeying all laws, including that he not illegally reenter the United States.

The court set sentencing for March 22, 2010, and released him to ICE for deportation.

On March 22, 2010, defendant did not appear for sentencing and the court issued a bench warrant.

Two years later, on May 19, 2012, defendant was booked into the Madera County jail.

On August 27, 2012, the court held a hearing to determine whether defendant violated the *Cruz* waiver.

> "THE COURT: And he is here for a hearing with regard to whether he violated the terms of a Cruz waiver. And it is my understanding the terms of the Cruz waiver—that he was to make and keep appointments with the probation officer within 24 hours of release, if not deported by [ICE], and the matter was referred to Probation. He failed to appear at the probation department for purposes of scheduling an appointment to assist in the preparation of their report.

> "And according to the records of Madera County Department of Corrections, February 24 he was turned over to the custody of [ICE]. And there was no further contact with the defendant or any agent on his behalf to explain or excuse why he failed to appear. And then apparently [defendant] returned to the U.S., as he is here now. [¶] That is my understanding of the procedural posture of the case. [¶] … [¶]

> "[DEFENSE COUNSEL]: … It's my understanding that that was the agreement, and he is back here in the U.S. [¶] However, the only issue that I want to raise is that I believe he did 26 months in federal custody for illegally returning to the U.S. The only—I've looked into the issue in terms of if that credit applies. I don't believe it can at all. However, I do believe that the Court may have discretion to look at that in terms of mitigation of the stipulated sentence. And for that I would like a week or two, maybe, if it's okay with [defendant], two weeks for me to see if there's some authority for that. If not, then there will be nothing else. [¶] … [¶]

"THE COURT:  All right.  So if we get the position of [defense counsel] in two weeks, and I'll make the same offer to the People.  I'll allow the People to file anything if you want to, [prosecutor], you're not required to.  But if you want to provide some information or authority— [¶] … [¶]

"[PROSECUTOR]:  And I'm sorry, is the Court going to find the violation right now and simply put over the sentencing so that we don't have to come back to that?  [¶] … [¶]

"THE COURT:  All right.  I will find that [defendant] has violated the terms of the Cruz Waiver and the agreement in that he has returned to the U.S. and failed to report to Probation as require[d] for the preparation of its report.  [¶]  And apparently the terms of the agreement were that it would be a stipulated term of six years, four months, and it is with regard to whatever the judgment may be or the discretion of the Court in that regard.  That is the authority which the Court is seeking from counsel.  So I'll be looking for that.

"[DEFENSE COUNSEL]:  Your Honor, only one comment.  I don't think it's going to matter, but technically he didn't violate the reporting requirement.  Because I think it was only if he was not deported.  And he was deported.  But he did violate in terms of illegally returning.

"THE COURT:  Comment by the People?

"[PROSECUTOR]:  As [defense counsel] says, I don't think it really makes a difference.  So submitted.

"THE COURT:  All right, thank you very much.  [¶]  I believe [defense counsel] is correct, that he was in custody while he was here at the time when he might have otherwise reported.  And then he was taken by Customs authorities, [ICE] authorities, and thereafter, returned to the U.S.  [¶]  So it will only be for the basis that he returned to the U.S. that he is in violation of the Cruz agreement or waiver."

On September 14, 2012, defense counsel asked the court to continue sentencing.

The following occurred:

"[DEFENSE COUNSEL:]  We have documents for [defendant] from the Department of Justice, from Madera County Department of Corrections, to indicate that he was in federal custody in either South Carolina or Georgia or both.  [¶]  I spoke to Mr. Ginder in the district attorney's office, who indicated they picked him up from Atlanta, Georgia, and brought him here.  So the question I have still is whether he ever left

4

the country. [¶] … [¶] … And ultimately if we find out that he wasn't out of the country, then we won't be able to request any reconsideration."

On October 4, 2012, defense counsel asked for another continuance. The following occurred:

> "[PROSECUTOR]: If we're going to continue it out again, I would want to inquire as to what information is being sought as far as how necessary it is.
>
> "[DEFENSE COUNSEL]: Well, the information is basically, he has always said from the beginning that in his federal case in San Diego that the probation department in Madera got involved, and because of their involvement his time was increased. Now, the issue is, if that is true, does that in any way affect his six years here in Madera?
>
> "THE COURT: Basically getting credit for whatever time that—
>
> "[DEFENSE COUNSEL]: Yeah.
>
> "THE COURT: —he was in because it related to the Madera action?
>
> "[DEFENSE COUNSEL]: Yes.
>
> "THE COURT: I understand the theory."

On November 1, 2012, defense counsel reported that he had no information to support a request for reconsideration. The court stated it would refer the matter to the probation department for computation of time credits.

On November 29, 2012, the probation officer prepared a report stating that on February 19, 2010, defendant pled guilty in this case, was released on his own recognizance, and turned over to ICE. He failed to appear for sentencing on March 22, 2010, and a bench warrant was issued. He was subsequently sentenced to 27 months in federal prison. On February 28, 2012, he was released on supervised release for three years. On April 26, 2012, he was arrested in Georgia on the bench warrant in this case. On May 18, 2012, he was received in Madera. On the same date, an ICE hold was placed on him.

5

The probation officer noted: "The defendant said he has resided in Madera County since he came to the United States in 1992, except for the period of time he was deported in 2010 and placed in Federal State Prison in Georgia and then returned to Madera County Department of Corrections."

In the list of defendant's criminal history, the probation officer noted that on November 19, 2010, defendant was convicted and sentenced to 27 months in federal prison with three years of supervised release. On February 28, 2012, he was placed on supervised release.

On February 21, 2013, in anticipation of the sentencing hearing, defense counsel filed a sentencing statement in mitigation, arguing that defendant's sentence should run concurrently with the federal case in which he had served almost two years. Attached as Exhibit A was a form AO 245B, entitled "Judgment in a Criminal Case," filed in federal court on August 16, 2010, and signed by a federal judge, documenting the judgment in defendant's case and stating that defendant had pled guilty to a violation of title 8 United States Code section 1326 (reentry of a removed alien) as a deported alien found in the United States.[3]

On February 22, 2013, at the sentencing hearing, counsel argued whether defendant should receive credit for time served in federal prison, as follows:

"[DEFENSE COUNSEL]: It is the defense view that [defendant] should receive credit for the two years straight that he did in federal

_____

[3] Title 8 United States Code section 1326 provides in part: "[A]ny alien who—[¶] (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter [¶] (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this or any prior Act, shall be fined under title 18, … or imprisoned not more than 2 years or both."

6

custody. And up until today I've not had a case in my possession that is more deserving of a concurrent sentence. And the reason why is that defendant's sentence was bumped up from one year to six years, four months because he violated the Court's advisement and warning that if he returned to the United States, he would be facing the six years, four months. And it is exactly that same act of trying to cross the border which activated the federal prosecution for illegal reentry.

"Now, the—my calculation of time credits is much greater, because it encompasses 365 days, plus 361 days straight. I believe that [defendant] is very close to timing out but I do not think he's timed out. I have my own calculation of time credits. But I think that this is a situation where if we don't give [defendant] credit for the time that he did in federal custody for the illegal reentry, we're in essence punishing him twice for the same conduct.

"The Court told him, 'If you return to the United States you're going to get up to six years, four months.' That's what he did. He returned to the United States. [¶] He did not even enter the United States. He's stopped at the border, taken into custody, prosecuted in San Diego, pled to 27 months. Did four days short of two years straight.

"So with those comments, if the Court agrees with me, I have time credits. And I just don't think it would be appropriate to punish the defendant twice who's trying to cross the border. Thank you.

"THE COURT: Thank you, [defense counsel].

"Comment, [prosecutor]?

"[PROSECUTOR]: I disagree with Counsel's legal analysis. We aren't punishing him twice for the same conduct. Punishing him federally for entering the United States illegally is a federal crime, and we are not punishing him for that. He has already been punished. He is just getting the sentence that he was told he would get, and he violated his Cruz Waiver, the Court has so found on August 27th of 2012, and [defendant] should not benefit from the fact that he happened to be caught by the federal authorities and had to spend some time in federal prison. It's unfortunate, but it happened. [¶] And I would submit that he be sentenced to the six years, four months previously agreed to, Your Honor. Thank you.

"THE COURT: Any response, [defense counsel]?

"[DEFENSE COUNSEL]: Just shortly. If this case were the other way around, where [defendant] first got the six years, four months here, and

7

then as they do many times when you're sent to prison, they pick them up from prison on their release date, there would have been a concurrent time issue there too. [¶] If the defendant had done anything, anything at all, other than try to cross the border, I would agree with [the prosecutor].… But I just don't—I think it violates due process, and the Court's own sense of how much punishment he deserves. [¶] And so I hope the Court will agree with me. If it does, then it is my opinion that he has 1,091 actual days.

"THE COURT: All right, thank you, [defense counsel].

"As mentioned, I have read and considered the report of the probation officer. That was filed November 30, 2012. I have the supplemental information from Probation on the time credits filed January 23, 2013, and then the sentencing statement in mitigation filed February 21, 2013. I've read and considered all of those.

"I appreciate the comments of both the People and the defense in this matter. It appears to me that it would not be punishing [defendant] twice. I would view this analogous to a violation of probation matter. In a probation—if the defendant agrees to abide by specific terms, such as obey all laws, if he or she violates the probationary terms, then the Court may impose judgment based upon that violation. That does not mean that the Court would be in any way prevented from also acting on a prosecution for the law which was violated, which also constituted the violation of probation. So I don't see this in the same vein. [¶] … [¶] So I will not be ordering time credits based upon the time he was in federal custody."

The court continued sentencing again to allow the probation department to further consider time credits.

On March 5, 2013, the probation officer prepared a supplemental report, which included the following: "There is no dispute that the defendant illegally re-entered the United States illegally [*sic*]. He was arrested, prosecuted and convicted in Federal Court for that offense, and served a term of incarceration for the Federal offense."

On March 18, 2013, the court sentenced defendant to the stipulated term of six years four months and awarded time credits.

8

## DISCUSSION

A defendant who pleads guilty or no contest pursuant to a plea agreement (§ 1192.5) may waive the right to be sentenced pursuant to his plea agreement by a so-called *Cruz* waiver (*Cruz, supra,* 44 Cal.3d at p. 1254, fn. 5; *Masloski, supra,* 25 Cal.4th at pp. 1219-1224). The defendant may expressly waive his rights under section 1192.5, if he has been fully advised of those rights, the waiver is knowing and intelligent, and it is obtained at the time of the trial court's initial acceptance of the plea. (*Cruz, supra,* at p. 1254, fn. 5.) Thus, the defendant can expressly agree to a greater sentence as a sanction for engaging in certain behavior as long as his waiver is part of the plea bargain itself. (*Masloski, supra,* at pp. 1221-1222.) If he willfully engages in that behavior, he violates the *Cruz* waiver. (*Cruz, supra,* 44 Cal.3d at p. 1254, fn.5.) "Willfully" means he knows what he is doing and intends to do it. (§ 7, subd. 1; *People v. Atkins* (2001) 25 Cal.4th 76, 85-86.)

"The question whether defendant violated the conditions of his release is one of fact, which we review under the substantial evidence test. 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record,* there is substantial evidence, contradicted or uncontradicted, which will support the determination ….' [Citation.] 'Deferential review is particularly necessary when, as here, the factual determination depends in part on judging a witness's credibility,' and we must uphold such a determination if it is supported by substantial evidence. [Citation.] 'We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact.'" (*People v. Rabanales* (2008) 168 Cal.App.4th 494, 509.)

Here, defendant's plea agreement included a *Cruz* waiver by which he agreed that he would receive a sentence of six years four months if, once released, he failed to obey all laws, including if he illegally reentered the country. He argues that the trial court

9

failed to explicitly find that his violation of the *Cruz* waiver was willful, and that such a finding would not be supported by the record. He says the record "does not establish that [he] ever re-entered the country following his plea, because the record does not establish that he ever *left* the country." He adds: "Certainly it cannot be said on this record that an implied finding of willfulness is supported by substantial evidence."

We disagree entirely. The record amply supports the conclusion that the trial court impliedly found defendant willfully and illegally reentered the country, and overwhelming evidence supports such a finding. At the August 27, 2012 hearing to determine whether defendant violated the *Cruz* waiver, defense counsel—in defendant's presence—stated that defendant was deported and violated the *Cruz* waiver "in terms of illegally returning." The court then summarized that defendant "was taken by Customs authorities, [ICE] authorities, and thereafter, returned to the U.S." In the face of counsel's concession and the court's statement, defendant did not deny illegally reentering the country (nor did he offer a scenario whereby he unwillingly reentered the country). "It is, of course, well established that the defendant is bound by the stipulation or open admission of his counsel and cannot mislead the court and jury by seeming to take a position on issues and then disputing or repudiating the same on appeal (*People v. Peters* (1950) 96 Cal.App.2d 671, 677[**4**])." (*People v. Pijal* (1973) 33 Cal.App.3d 682,

---

**4**     In *People v. Peters, supra,* 96 Cal.App.2d 671, the court explained: "It is elementary that in a homicide case the fact that the deceased met his death through the act or agency of the defendant must be proved. It may, of course, be proved by circumstantial evidence. [Citation.] Obviously, here, the cause of death was not proved by evidence. However, the cause of death is a fact, which, like every other fact, need not be proved, even in a criminal case, if admitted or conceded by defendant. While there was no direct proof of the cause of death, the conduct and attitude of defendant at the trial, as disclosed by the record, constituted at least an indirect concession of the fact." (*Id.* at p. 675.) "In a criminal case a defendant is not called upon to make explanation, to deny issues expressly (his plea of not guilty does that for him), nor is he required to point out to the prosecution its failure to make a case against him or to prove any link in the required chain of guilt. On the other hand, he cannot mislead the court and jury by seeming to take a position as to the issues in the case and then on appeal attempt to

697.) Defendant's concession provided substantial evidence that he was deported and then reentered the country illegally, thereby willfully violating the *Cruz* waiver. Any error by the court in not explicitly stating its finding that defendant willfully violated the *Cruz* waiver was harmless.

We also note that after this hearing, other evidence further supported defendant's concession. His federal conviction was for a violation of title 8 United States Code section 1326, which punishes illegal reentry into the country following deportation. Defendant himself provided proof of this conviction in connection with his request for a mitigated sentence. And, according to the probation officer's report, defendant told the probation officer that he was deported in 2010, and then placed in federal prison. The report noted there was "no dispute that the defendant illegally re-entered the United States."

Defendant failed to dispute this evidence or his counsel's concessions throughout these proceedings. Consequently, he cannot now dispute the issue on appeal. Furthermore, after reviewing the entire record, we are confident no due process violation occurred.

## DISPOSITION

The judgment is affirmed.

---

repudiate that position. A reading of the proceedings at the trial, including defendant's statement at the opening of his case and his argument to the jury at the end of the case, clearly shows that at no time was he questioning either that the knife wound caused Cole's death, or that that fact had not been established or was an issue to be resolved by the jury. It also shows that defendant was conceding the cause of death." (*Id.* at p. 676.)