Filed 8/31/16  P. v. Campos CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VICTOR HUGO CAMPOS,<br><br>    Defendant and Appellant. | B260079<br><br>(Los Angeles County<br>Super. Ct. No. MA059108) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Bernie C. Laforteza, Judge.  Affirmed.

Katharine Eileen Greenebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb, Nathan Guttman and Ilana Herscovitz, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Victor Hugo Campos (defendant) appeals from his conviction of possession for sale and transportation of methamphetamine. He contends that the trial court abused its discretion in admitting evidence of uncharged methamphetamine offenses to prove intent to sell and knowledge of the presence of the drug. As defendant has failed to preserve this issue for review or to demonstrate error or prejudice, we affirm the judgment.

**BACKGROUND**

Defendant was charged in count 1 of an amended information with the sale or transportation of methamphetamine, in violation of Health and Safety Code section 11379, subdivision (a), and in count 2 with the possession for sale of methamphetamine, in violation of Health and Safety code section 11378. In addition, the amended information alleged that defendant had suffered two prior serious or violent felonies as defined in the "Three Strikes" law (Pen. Code, §§ 667, subd. (b)-(j), 1170.12), as well as seven prior convictions resulting in prison terms within the meaning of Penal Code section 667.5, and two prior convictions which made him subject to Health and Safety Code section 11370.2, subdivision (c).

In a bifurcated trial, the jury found defendant guilty of both counts as charged, and the trial court found true all the allegations of prior convictions. On October 1, 2014, the court denied defendant's motion to strike prior convictions and sentenced him to a total of 18 years in prison. The sentence as to count 1 was comprised of the high term of four years, doubled under the Three Strikes law, and enhanced by six years due to prior narcotics convictions, as well as four years due to the prior prison terms. As to count 2, the court imposed the middle term of two years, doubled it to four, and then stayed execution of the sentence pursuant to section 654. The court ordered defendant to pay mandatory fines and fees, and awarded presentence custody credit of 1,120 days, consisting of 560 actual days in custody and 560 days of custody credit.

Defendant filed a timely notice of appeal from the judgment.

2

**Prosecution evidence**

Los Angeles County Sheriff's Detective Tim Schank testified both as a percipient witness and expert witness in the area of narcotics investigation.

On March 7, 2013, Detective Schank and his partner Detective Keesee were on patrol in Lancaster near a house they had been watching for several weeks as part of an investigation concerning sales of methamphetamine. Informants had indicated that the neighborhood was known for narcotics use and sales. After seeing a 1996 Mercedes Benz driven by defendant, who was known to have a prior record of methamphetamine sales, the detectives pulled the car over and conducted a lawful search of the interior. There, Detective Schank observed metal screws, commonly used to keep interior panels in place, and several tools, such as pliers and screwdrivers, necessary to remove and replace them. The panels looked as though they had been taken apart numerous times, as some of the screws appeared worn, with parts of the black coating worn off. The car console came out easily and some of the nearby carpet and panels were loose. Though no contraband was found, Detective Schank searched defendant's person and found $1,800 in multiple cash denominations. Detective Schank explained that it was common for narcotics sellers to be in possession of multiple denominations, in order to be "essentially, . . . kind of like a mobile cash register."

Two weeks later, Detective Schank and his partner again saw defendant driving the same car. Since the registration had expired in 2012, the detectives pulled over defendant and asked permission to search the car. Defendant gave his consent and said, "I don't have anything. Feel free to search." Detective Schank saw the same items inside the car as he had two weeks before. When he lifted the carpet and reached under a side panel, he felt a plastic bag, which he removed and inside saw what appeared to be methamphetamine. Detective Schank estimated that it was one ounce, or approximately 28.3 grams, which would yield between 566 and 1,415 individual uses. Detective Schank also observed a clear plastic bag with approximately one-eighth of an ounce of methamphetamine, an amount commonly referred to on the street as an "eight ball," which appeared to be ready to sell given its packaging. Detective Schank had previously

3

investigated or arrested hundreds of people for possession of methamphetamine, and would typically find between one quarter of a gram to half a gram of the drug in their possession. The detective also found two cell phones which belonged to defendant.

Detective Schank advised defendant of his *Miranda* rights and told defendant he had found a large quantity of methamphetamine inside his car.[1] First, defendant accused Detective Schank of planting the drugs, and then asked who had set him up. Defendant said he had been the only person to drive his car in the two weeks since the last search. That no one else had access to his car, and that he checked his friends before letting them into the car to make sure they did not have anything illegal in their possession. When Detective Schank reminded defendant of the search two weeks earlier, and said that defendant must have placed the methamphetamine there recently, defendant appeared to have an epiphany and said, "Well, it looks like I'm going back to prison for another two to three years." Defendant then asked whether he could "work off" his case, which Detective Schank declined.[2] On the drive to the Sheriff's station, after confirming their conversation was not being recorded, defendant told the detective that he would provide the names of people who had pounds of methamphetamine and guns, adding, "Call that shit sugar and give it back to me. Let me go, and I'll give you those things." Detective Schank again declined.

During the booking process, Detective Keesee inspected the two recovered cell phones and found recent text messages. A message from "Lupita" indicated that she had just been paid, and after 20 minutes with no response from defendant, she texted: "I guess I'll go make someone else rich." Detective Schank interpreted this to mean that she was going to another methamphetamine supplier. A message from "Hit Man" read: "Hey, my boy. It's hit man. I got 50. I'm here at black dude house." A message from "Risky" read: "Can you front me something till tomorrow after work?" Defendant

---

[1] See *Miranda v. Arizona* (1966) 384 U.S. 436, 444-445.

[2] Detective Schank explained that "working off his case" meant becoming an informant leading to the arrests of others in possession of narcotics of equal or greater value than the present case.

replied, "What do you need?" Risky texted: "Whatever you can do." When defendant offered a "40," Risky replied: "20 just to get me through the day manana." Detective Schank explained that "40" meant $40 worth of drugs, and "20" meant $20 worth, and he concluded that defendant was using text messaging to conduct narcotic transactions.

After a lab analysis, the packages found in defendant's car were determined to contain methamphetamine, and that one weighed 3.5 grams, while the other weighed 25.5 grams. Detective Schank testified that the street value of 3.5 grams of methamphetamine was approximately $140 to $190 in Lancaster, and up to $1,000 in other areas where methamphetamine was not so prevalent. Given a hypothetical question mirroring the facts in evidence, Detective Schank opined that the person who possessed the methamphetamine did so with the intent to sell.

Jailer Sandra Nelson testified to having overheard part of defendant's telephone conversations in the booking cell in which he emphatically told someone to get rid of the phone and that there was no case without the phone. Defendant seemed unaware the jailer was there, so she immediately left the room and reported what she heard to Detective Keesee.

Sergeant Robert Gillis testified that in March 2006, after he pulled over a car for speeding and illuminated the interior with his lights, he saw movement in the right front passenger seat. The passenger, later identified as defendant, was reaching all over inside the car, which made Sergeant Gillis nervous, so he had defendant step out of the car. As he did, defendant said, "I'm not going to lie to you," and admitted that he had methamphetamine in his pocket, adding that he had just picked it up and was taking it to someone who had given him money. Sergeant Gillis recovered an ounce of the methamphetamine and placed defendant under arrest. At that time, one ounce of methamphetamine was worth about $1,200.

In June 1999, when Deputy Russell Bailey was assigned to narcotics investigation, he conducted a traffic stop of a car in which defendant was the passenger. As Deputy Bailey approached the car, he saw defendant making stuffing motions toward the center console, so he ordered defendant out of the car, searched the area where defendant had

5

been sitting, and found a magnetic key holder between the center console and the floorboard. Inside the key holder were two baggies containing a powder resembling methamphetamine.

Certified records of conviction were admitted into evidence, showing that defendant was convicted of possession of methamphetamine for sale after the 2006 arrest and that defendant was convicted of possession of methamphetamine after the 1999 arrest. In addition, a certified record of conviction was admitted into evidence, showing that defendant was convicted of possession of methamphetamine for sale in 1995.

## DISCUSSION

Defendant contends that the trial court abused its discretion in admitting evidence of other crimes pursuant to Evidence Code section 1101, subdivision (b) (section 1101(b)). Section 1101, subdivision (a) prohibits the admission of character evidence offered to prove the defendant's conduct on a specified occasion, but as relevant here, subdivision (b) provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime . . . when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." Thus, "[e]vidence of other crimes is not admissible merely to show criminal propensity, but it may be admitted if relevant to show a material fact such as intent. [Citations.] To be admissible, there must be some degree of similarity between the charged crime and the other crime, but the degree of similarity depends on the purpose for which the evidence was presented." (*People v. Jones* (2011) 51 Cal.4th 346, 371.)

Here, the evidence regarding defendant's similar crimes was admitted to show intent, as well as knowledge and lack of mistake. "The least degree of similarity is needed when, as here, the evidence is offered to prove intent . . . , [as] the recurrence of a similar result tends to negate an innocent mental state and tends to establish the presence of the normal criminal intent. [Citations.] The determination whether to admit other crimes evidence lies within the trial court's discretion. [Citation.]" (*People v. Jones*, *supra*, 51 Cal.4th at p. 371.) "In prosecutions for drug offenses, evidence of prior drug

6

use and prior drug convictions is generally admissible under [section 1101(b)], to establish that the drugs were possessed for sale rather than for personal use and to prove knowledge of the narcotic nature of the drugs. [Citation.]" (*People v. Williams* (2009) 170 Cal.App.4th 587, 607; see also *People v. Pijal* (1973) 33 Cal.App.3d 682, 691.)

Once the trial court determines that prior conduct is sufficiently similar to the charged crimes to be relevant to prove intent, it must then weigh the probative value of the evidence under Evidence Code section 352 against its potential to create substantial risk of undue prejudice, confusing the issues, or misleading the jury. (*People v. Rogers* (2013) 57 Cal.4th 296, 326.) The "'"'"ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citations.]"'"'" (*Ibid*.)

Defendant contends that the prior cases were not sufficiently similar to the current case to be relevant to show intent and knowledge, and he points out dissimilarities in the cases. Here, defendant notes, he was the driver with no passengers, he hid the methamphetamine under carpeting, and he went to trial rather than plead guilty. Defendant adds that in two of the prior cases, he was the passenger, did not attempt to hide the methamphetamine until the traffic stop was initiated, and then admitted owning the drugs. Defendant concludes that the *only* similarity between the current and prior cases is that he was in a car when he was arrested. From this conclusion, he argues that a single broad similarity is not enough to admit the evidence to show intent or knowledge.

Defendant did not object to the evidence on this ground in the trial court.[3] A challenge to the admissibility of evidence is generally not cognizable on appeal in the

---

[3]     Defense counsel stipulated to the authenticity of the conviction records, but objected to "going into the details of each single one," and asked "the court to look closely to make sure that it meets the requirement factually . . . for [section] 1101(b)." The trial court announced that it would exclude one of the three convictions as likely to cause an undue consumption of time, but admitted the third conviction after the prosecution agreed to submit the certified record of conviction without testimony into the

absence of a specific and timely objection in the trial court on the ground urged on appeal. (Evid. Code, § 353.) An objection on one ground does not preserve a challenge based upon a different ground. (*People v. Partida* (2005) 37 Cal.4th 428, 434-435.) Section 353 "require[s] sufficient specificity of evidence and legal grounds for the opposing party to respond if necessary, for the trial court to determine the question intelligently, and for the appellate court to have a record adequate to review for error." (*People v. Ramos* (1997) 15 Cal.4th 1133, 1171-1172.) As defendant did not comply with these requirements, he gave the trial court no opportunity to exercise its discretion on the question of similarity, and thus obtained no ruling on the issue for this court to review.

Contrary to defendant's argument however, a few dissimilarities do not render a prior similar crime irrelevant to the issue of intent or knowledge; indeed, a single "crucial point of similarity" may be sufficient to establish the relevance of the prior crime. (*People v. Jones*, *supra*, 51 Cal.4th at p. 371.) In concluding that the *only* similarity between the current and prior cases was defendant's presence in a car when he was arrested, defendant overlooks the crucial point of similarity in the current and all three prior cases: the possession and transportation of methamphetamine. We conclude that such similarity, combined with the fact that defendant intended to sell the methamphetamine in two of the prior cases, was relevant and probative on the issue of defendant's knowledge that methamphetamine was hidden in the car and defendant's intent to sell the drug. Defendant has thus not demonstrated that if he had made a specific objection on the ground of dissimilarity, the trial court would have acted in an arbitrary, capricious, or patently absurd manner in overruling that objection. (*People v. Rogers*, *supra*, 57 Cal.4th at p. 326.)

Moreover, defendant has not demonstrated that admission of the evidence resulted in a miscarriage of justice. (Evid. Code, § 353.) A miscarriage of justice occurs when it appears probable that a result more favorable to the appealing party would have been

---

details of the arrest. Defense counsel then objected to the evidence under Evidence Code section 352 as "unnecessary."

reached in the absence of the alleged errors. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see Cal. Const., art. VI, § 13.) Under the *Watson* test, it is defendant's burden to demonstrate prejudice by establishing "a reasonable probability that error affected the trial's result." (See *People v. Hernandez* (2011) 51 Cal.4th 733, 746.)

Defendant contends that without the prior crimes evidence there was no substantial evidence to support his guilt. Although defendant acknowledges his burden to demonstrate this point, he fails. We agree with respondent that the other evidence of defendant's guilt was overwhelming. Detective Schank knew that defendant had a prior record of methamphetamine sales, and had stopped him two weeks before his arrest while driving his 1996 Mercedes Benz in a area under surveillance for narcotics activity. At that time, tools and other items in defendant's car led Detective Schank to believe that drugs had been previously secreted behind the panels and under the carpeting. When defendant was stopped the day of his arrest, he admitted that the 1996 Mercedes Benz belonged to him and that he exclusively used it. After Detective Schank gave defendant *Miranda* advisements and showed him the methamphetamine found in the car, defendant first claimed to have been set up, and then asked to trade information in exchange for the return of the methamphetamine without charges. He did not deny his guilt. Detective Schank opined that the amount of methamphetamine found in defendant's car would yield between 566 and 1,415 individual uses, far more than personal use. Defendant carried cash in multiple denominations, an indicator of drug selling, and text messages on defendant's cell phone also suggested narcotic transactions. After his arrest, defendant was overheard in a telephone conversation emphatically telling someone to dispose of the phone because without it there was no case against defendant.

An appropriate limiting instruction, combined with strong evidence of guilt apart from the uncharged crimes, will eliminate any reasonable probability that defendant would have received a more favorable result had the evidence of his prior drug offenses been excluded. (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 755-756.) Such was the case here. In addition to hearing the additional overwhelming evidence we have summarized, the jury was instructed in relevant part to consider the other crimes evidence

9

solely for the limited purpose of deciding whether the defendant acted with the intent to sell the narcotics in this case or whether he knew of the presence of narcotics. (CALCRIM No. 375.)  The jury was also told that the other crimes evidence was just one factor to consider, not sufficient by itself to prove guilt, that the People were still required to prove guilt beyond a reasonable doubt, and that the jury should "not consider this evidence for any other purpose [or] conclude from this evidence that the defendant has a bad character or is disposed to commit crime."

We conclude that any alleged error in the admission of the prior crimes evidence was harmless.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
HOFFSTADT

10